## Case No. 15,721.

### UNITED STATES v. MARKS et al.

[2 Abb. U. S. 531;[1] 10 Int. Rev. Rec. 42; 2 Am. Law T. Rep. U. S. Cts. 124.]

Circuit Court, D. Kentucky. May Term, 1869.

CONSTITUTIONAL LAW — PENSION AGENTS — FEES.

1. Sections 12 and 13 of the pension act of July 4, 1864 (13 Stat. 387),—which prescribe

[1] [Reported by Benjamin Vaughan Abbott. Esq., and here reprinted by permission.]

the fees of agents employed to collect pensions, and impose a penalty for receiving a greater fee than such as is prescribed,—are not unconstitutional. The power to secure to the pensioner the receipt of the pension granted, free of unreasonable tolls or exactions, is incident to the undeniable power of congress to grant pensions.

[Cited in U. S. v. Hall, 98 U. S. 356.]

2. By the express terms of the pension act of July 4, 1864 (13 Stat. 387), the penalty imposed by section 13 upon a pension agent, for receiving greater fees than are prescribed by section 12 for services in collecting pensions, is incurred only where the fee is received for conducting a claim preferred under that act. It cannot be enforced against one who has received an excessive fee for services in collecting a pension given under another act of congress,—e. g., the act of July 4, 1862 (12 Stat. 566).

3. The pension acts of 1862 and 1864, considered in connection; and the effect of the latter upon the former, construed and explained.

Motions in arrest of judgment upon an indictment, and for a new trial.

The defendants, Bernet Marks and Nathan Bersinger, were tried and convicted upon an indictment for receiving excessive fees for services as pension agents; and these motions were now made in their behalf.

James Speed and O. F. Stirman, for the motions.

Benj. H. Bristow, U. S. Dist. Atty.

BALLARD, District Judge. The defendants having been found guilty by a jury, the case is now before me on a motion in arrest of judgment, and also on a motion for new trial. At common law these two motions could not be made at the same time; but it has been long the practice in this state to make and hear them together; and, as there has been no objection interposed here to this course being taken, I shall proceed to consider the motions as if they were entirely regular.

Two grounds are relied on in support of the motion in arrest of judgment: First. That the indictment is defective in not setting forth any offense under the statute on which it is founded. Second. That the statute itself is unconstitutional.

The indictment contains four counts. Some of them may be defective; but the rule is well settled that, if any one is sufficient, it will support the judgment of the court upon the verdict.

The counsel for the defendants have established to my entire satisfaction that the first and second counts are bad, but they concede that the third and fourth are substantially good. I shall, therefore, not examine these counts critically, but, for the purpose of this case, assume them to be sufficient in form and substance, and proceed to inquire into the constitutionality of the act on which they are founded.

These counts are founded on sections 12 and 13 of the act of congress, approved July 4, 1864, entitled "An act supplementary

to an act entitled 'An act to grant pensions,' " approved July 14, 1862 (13 Stat. 387). Section 12 prescribes "the fees of agents and attorneys for making out and causing to be executed the papers necessary to establish a claim for a pension, bounty," &c., and section 13 imposes a penalty on "any agent or attorney who demands or receives any greater compensation for said services" than is prescribed in section 12.

The power of congress to grant pensions and bounties is not denied by the learned counsel of the defendants, nor is it in my opinion deniable. But counsel insist that when the pension is granted, the sum which the claimant may agree to pay to his attorney for preparing the papers necessary to establish his claim, must rest entirely in contract, and that any attempt by congress to regulate it, not only intrenches upon the right of the states to regulate contracts between citizens, but is an unconstitutional invasion of the liberty of the citizen.

True, under our form of government, the power to regulate the obligation and the mode of enforcing contracts generally, belongs to the states. But it seems to me undeniable, that if congress may grant pensions they may secure to the pensioner the pension granted. The power to do the one necessarily implies power to do the other.

The powers of congress for the protection of both persons and things are coextensive with their powers of legislation. There is, therefore, no right which they may grant, nor any person they may commission, that may not be protected by such laws as congress may devise, provided they are such as are not expressly prohibited by the constitution. Without powers coextensive with these here assumed, it seems to me that the government of the United States is no government at all, for, certainly, that is not a sovereign government which is obliged to leave to some other government the protection of either rights granted by it or persons acting under its authority. The United States, then, are not obliged to leave their pensioners,—objects of their peculiar care,—to such protection only as the state laws may prescribe in the matter of procuring their pensions. If they may provide for the support of the meritorious soldiers and sailors, who, in consequence of wounds received in the service of the country, have lost all capacity to support themselves,—if they may provide for the maintenance of the widows and helpless children of those who have lost their lives in battle, surely it is their right and their duty to guard, by all suitable laws, the fund thus devoted from being diverted from its object, by either the craft or the extortion of unscrupulous agents.

I do not care to pursue the subject further, for it is now universally admitted that, when congress have power over any given subject, they have all the power over that subject which properly belongs to any sovereign government; that if the end be legitimate, all the means which are appropriate and adapted to the end are likewise legitimate, and may be applied and used by congress in their discretion.

The objection that the statute is unconstitutional, because it interferes with the liberty of the citizen, I do not comprehend. All laws, in a certain sense, restrain that liberty which the individual is supposed to possess in a state of nature. The very idea of government involves control—restraint. True, governments are not instituted for the purpose of restraining men in their liberty, but for their protection; but, as protection can generally be found only through restraint, the large mass of the laws of all governments do regulate and restrain the conduct of the citizen. The particular design of the statute now under consideration is not to restrict the citizen in disposing of what is his own, but, by guarding the ignorant against the craft of the cunning, and the needy against the extortions of the rapacious, to secure the bounty of the government to the real objects of its care. Upon the whole, as I have no doubt of the constitutionality of the statute in question, the motion in arrest of judgment must be overruled.

I am supported in this opinion, by the express decision of the learned district judge of the Western district of Michigan,—U. S. v. Fairchilds [Case No. 15,067], and by the reasoning of the supreme court in the case of McCulloch v. Maryland, 4 Wheat. [17 U. S.] 316.

I proceed to consider the motion for a new trial. There is but one ground assigned which need be noticed, and that is that the averments of this indictment were not sustained by the evidence. In considering this question, reference must be had to the provisions of the act of congress, to the allegation of the indictment, and to the evidence.

Section 12 of the act of July 4, 1864, provides: "That * * * the fees of agents and attorneys for making out and causing to be executed the papers necessary to establish a claim for a pension, bounty, and other allowance before the pension office, under this act, shall not exceed the following rates: For making out and causing to be duly executed a declaration by the applicant, with the necessary affidavits, and forwarding the same to the pension office, with the requisite correspondence, ten dollars; which sum shall be received by such agent or attorney in full, for all services in obtaining such pension, and shall not be demanded or received, in whole or in part, until such pension shall be obtained; and the sixth and seventh sections of an act entitled 'An act to grant pensions,' approved July 14, 1862, are hereby repealed."

Section 13 provides: "That any agent or attorney who shall, directly or indirectly, demand or receive any greater compensation

for his services under this act, than is prescribed in the preceding section of this act, or who shall contract or agree to prosecute any claim for a pension, bounty, or allowance under this act on the condition that he shall receive a per centum upon any portion of the amount of such claim, or who shall wrongfully withhold from a pensioner or other claimant, the whole or any part of the pension or claim allowed and due to such pensioner or claimant, shall be deemed guilty of a high misdemeanor, and upon conviction thereof, shall, for every such offense, be fined not exceeding three hundred dollars, or imprisoned at hard labor not exceeding two years, or both, according to the circumstances and aggravation of the offense."

The indictment charges, in substance, that Catharine Fitzgerald had a claim and was entitled to a pension under the act of congress of July 4, 1864; that she employed the defendants as her agents and attorneys, to make out and cause to be executed the papers necessary to establish her claim for a pension under said act; that they did make out the papers necessary to establish said claim; and that they unlawfully demanded and received for their services in making and causing the papers to be executed, a sum of money greater than the compensation prescribed in section 12 of the act of congress aforesaid, to wit, the sum of forty-one dollars and eighty-seven cents. The evidence showed that Catharine Fitzgerald is the widow of Thomas Fitzgerald, a private regularly enlisted and mustered into the army of the United States, and who died in 1863, of disease contracted while in the service of the United States, and in the line of duty. It thus appeared, that she was entitled to a pension under the second section of the act of July 4, 1862, entitled "An act to grant pensions" (12 Stat. 566), and the evidence showed that she claimed the pension allowed by this act and no other, except the increased pension, allowed by the act of July 25, 1866 (14 Stat. 230), on account of the pensioner having children under the age of sixteen years.

There was no evidence that she claimed any pension allowed by the act of July 4, 1864, or that she employed the defendants to assert any claim, or that they performed any services under that act, unless it can be maintained, as the district-attorney contends, that the acts of July 14, 1862, and of July 4, 1864, are one act, and that a pension granted by the act of 1862, is, in contemplation of the law, granted by the supplementary act of 1864, and, consequently, that services performed in making out the papers necessary to establish a claim for a pension allowed by the act of 1862, are, if performed after July 4, 1864, in contemplation of law performed under the act of that date, and subject to the restrictions contained in it.

It will be seen by reference to the act of 1862, that it grants pensions to various persons; that, in section 6, it prescribes the fees of agents and attorneys for making out and causing to be executed the papers necessary to establish a claim for a pension "* * * before the pension office under this act;" and that in section 7 it denounces a penalty against "any agent or attorney who shall directly or indirectly demand or receive any greater compensation for his services under this act, than is prescribed in the preceding sections of this act."

It will also be seen, by reference to the supplementary act of 1864, that it grants pensions to several persons or classes of persons not enumerated in the act of 1862; that, in section 12, it prescribes "the fees of agents and attorneys for making out and causing to be executed the papers necessary to establish a claim for a pension * * * before the pension office under this act," and that, in section 13, it denounces a penalty against "any agent or attorney who shall, directly or indirectly, demand or receive any greater compensation for his services under this act than is prescribed in the preceding section of this act."

There is nothing in the provisions of the act of 1864, as thus cited, at all inconsistent with those cited as part of the act of 1862, and there is no doubt that but for the express repeal of sections 6 and 7, found in the latter part of section 12 of the act of 1864, the fees prescribed by section 6 and the penalties for excessive fees prescribed by section 7 of the act of 1862 would apply to all pensions granted by that act, and that the fees prescribed by section 12 and the penalties for excessive fees prescribed by section 13 of the act of 1864 would apply only to pensions granted by the latter act.

The words "under this act," employed in both statutes, are extremely explicit, and leave no room for construction. They restrict, as plainly as language can, the operation of the provisions with which they are respectively connected to the particular act in which they are found. Nor can the fact that sections 6 and 7 of the act of 1862 are expressly repealed by the last clause of section 12 of the act of 1864 operate to enlarge the preceding provisions of the same section. These provisions, we have already seen, are unambiguous. By the plainest possible language they prescribe the fees of agents and attorneys making claim to or obtaining a pension granted by the act of 1864, and not by any other act. And it is impossible to conceive that the meaning is in the slightest degree modified or changed by the further provisions that sections 6 and 7 of an act entitled "An act to grant pensions," approved July 14, 1862, "are hereby repealed."

The effect of this repeal cannot be to extend the preceding provisions of the section in which it is found, or the provisions of the succeeding section, to matters to which they plainly do not relate; but its effect is

to strip the pensions enumerated in the act of 1862 of all the guards thrown around them by the provisions of sections 6 and 7 of that act. Henceforward there is not only no limit to the fee which an agent may demand for making out and causing to be executed the papers necessary to establish a claim for a pension under the act of 1862, and, consequently, no penalty for demanding an excessive fee, but all pending prosecutions for violations of the act of 1862—occurring even prior to July 4, 1864—must fail, because it is well settled that no prosecution can be supported by a repealed statute.

But, as already intimated, the district-attorney contends that the acts of 1862 and of 1864 are to be read as one act; that the act of 1864 is to be regarded as a re-enactment of the act of 1862, omitting only the repealed parts; and that, in fact, this is the legal effect of every amendatory or supplementary statute. In support of his position, he refers to the case of The Harriet [Case No. 6,099].

It is undoubtedly true, that where a statute is amended, the original statute is thenceforward to be read (striking out of it all of the repealed and incorporating into it all of the amended provisions) precisely as if the original statute was re-enacted, omitting the repealed and inserting in their appropriate places the amended provisions. But this rule will not allow the incorporating into or reading as part of the original act, a provision of the supplementary act, which, by its terms, plainly refers to the supplementary act only, and which has complete sense and operation without reference to the original act at all. Now, undoubtedly, the provisions of sections 12 and 13 of the act of 1864 are not without operation if they are confined, as their terms require, to the pensions granted by the act in which they are found, and, therefore, there is no rule of interpretation which requires or permits them to be incorporated into and read as part of the act of 1862. If the act of 1862 be now read, striking out of it all that is repealed by the act of 1864, and inserting into it all that is amendatory, still we cannot read as part of it sections 12 and 13 of the act of 1864, because they do not relate to it, except as they repeal some of its provisions. The whole effect of the provisions of sections 12 and 13 of the act of 1864 on the act of 1862, is to require that henceforward the act of 1862 be read with sections 6 and 7 omitted.

Again the district-attorney contends that in the construction of statutes, the intention of the legislature must prevail; that it is unreasonable to suppose congress, by the act of 1864, intended to prescribe the fees of the attorneys for making claim to only the very few pensions granted by that act, and to leave the fees of the same attorneys for making claim to the numerous pensions granted by the act of 1862 wholly unlimited.

But I have no means of ascertaining the intention of congress, except from what they have said. I have no right, upon any conjectures of policy which I may entertain, to supply an intention which cannot be derived from the language employed. I am obliged to take the statute just as it is written, and to adopt that construction which its language plainly imports. I cannot stretch it to cases obviously not embraced by its terms, because such cases seem to me to be included in the policy.

Congress have plainly declared that it shall not be lawful for attorneys making claim to pensions under the act of 1864 to demand or receive more than a prescribed compensation; but should the court conjecture that some other act not expressly forbidden—that a demand of more than the compensation fixed by the act of 1864 for making claim to pensions under the act of 1862—ought to be punished, for the purpose of effecting a supposed legislative intention, "it would" (as Judge Marshall said, in the case of The Paulina's Cargo, 7 Cranch [11 U. S.] 61), "certainly transcend its own duties and powers, and would create a rule, instead of applying one already made. It is the province of the legislature to declare in explicit terms how far the citizen shall be restrained, * * * and it is the province of the court to apply the rule in the case thus explicitly described—not to some other cases which judges may conjecture to be equally dangerous."

Moreover, the district-attorney is obliged to concede, and does concede, that for all violations by agents or attorneys of the act of 1862, occurring prior to the act of July 4, 1864, there could be no punishment after the latter date; because, by the act of that date, the penal provisions of the former act were repealed. But no well grounded reason can be assigned why congress should intend to relieve these violators, that does not apply with equal force to all like offenders. Why should we presume that congress intended that an attorney who demanded, in August, 1864, a fee of twenty dollars for making claim to a pension, allowed by the act of 1862, should be punished, when they have, by explicit legislation, declared that an attorney who demanded and received such fee for similar service in August, 1862, shall not be punished?

Still, I can hardly doubt that congress did not in fact intend to deprive the beneficiaries under the act of 1862 of the protection sought to be given by sections 6 and 7. I cannot, however, sitting here as a judge, say they did not intend to do what they have plainly done. I may conjecture that they overlooked the effect of the language used in sections 12 and 13 of the act of 1864, but I can neither overlook nor disregard it. I cannot supply the omission of the legislature, for it is a fundamental rule "that a penalty cannot be raised by implication, but must be express-

ly created and imposed." Jones v. Estis, 2 Johns. 379.

It follows, that as the indictment describes the offense as committed in reference to a claim under the act of 1864, when the evidence shows it has reference to a pension claimed under the act of 1862, there is a variance between the allegation and the proof which entitles the accused to a new trial. But this right to a new trial may be rested upon the still broader ground, that the penal provisions of the act of 1862 having .been repealed by the act of 1864, the evidence fails to show that they are guilty of any offense whatever.

A new trial must be granted.