## UNITED STATES *v*. HALL.

Congress has, under the Constitution, power to declare that the embezzlement or fraudulent conversion to his own use by a guardian of the money which he, on behalf of his wards, has received from the government as a pension due to them, is an offence against the United States, and to vest the proper Circuit Court with jurisdiction to try and punish him therefor.

CERTIFICATE of division in opinion between the judges of the Circuit Court of the United States for the Southern District of Ohio.

The facts are stated in the opinion of the court.

*Mr. Assistant Attorney-General Smith* for the United States.
*Mr. P. C. Smith, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Pensions granted to children under sixteen years of age may, in certain cases, be paid to their guardians, and the act of Congress provides that every guardian having the charge and custody of the pension of his ward, who embezzles the same in violation of his trust, or fraudulently converts the same to his own use, shall be punished by fine not exceeding $2,000, or imprisonment at hard labor for a term not exceeding five years, or both. Rev. Stat., sect. 4783.

Sufficient appears to show that the defendant in the indictment is the guardian of William Williamson, who was at the time mentioned, and long before had been, entitled to a pension from the government of the United States, and that the defendant, as such guardian, had collected pension-money belonging to his said ward as such pensioner, to the amount of $500, for which he had never accounted, and which he had never expended for nor paid to his said ward.

Payment of the money being refused and withheld, an indictment against the defendant was returned by the grand jury of the Circuit Court, in which it is charged, among other things, that he, the respondent, being then and there the duly appointed guardian of William Williamson, who was entitled to a pension from the government of the United States, and having then and there, as such guardian, the charge and custody of the

pension-money belonging to said ward, did unlawfully and feloniously embezzle, in violation of his trust, a large sum of money, to wit, $500, pension-money belonging to his said ward, which he, the defendant, as such guardian, had theretofore collected from the government of the United States.

Due appearance was entered by the defendant, and he demurred to the indictment. Hearing was had; and the following questions arose, upon which the judges of the Circuit Court were opposed in opinion, and the same were duly certified to this court: —

1. Whether the Circuit Court has any jurisdiction over the alleged offence, or any power to punish the defendant for any appropriation of the money after its legal payment to him as such guardian, it appearing that the defendant is the legal guardian of his ward under the laws of the State; and that the money alleged to have been embezzled and fraudulently converted to his own use had been paid over to him by the government, and belonged to his said ward.

2. If the defendant did embezzle the money and convert the same to his own use after it was paid over to him by the government, is he liable to indictment for the offence under the act of Congress, or only under the State law?

3. Is the act of Congress under which the indictment is found a constitutional and valid law?

Preliminary to the examination of the questions certified into this court for decision, it is proper to remark that the court, in reproducing the questions exhibited in the transcript, has not preserved the exact phraseology in which they appear to have been framed, but it is believed that the form here adopted is, in substance and legal effect, the same as the questions certified from the court below. They present only two questions for decision which it is important to answer in any formal manner: —

1. Whether the offence defined by the act of Congress is committed when the embezzlement and conversion charged in the indictment did not take place until the pension-money was paid over by the government to the defendant, as guardian of the ward.

2. Whether the act of Congress defining the offence charged

in the indictment is a valid law, passed in pursuance of the Constitution.

Attempt is made, undoubtedly, to raise a third question, as before explained ; but it is so obvious that the act of Congress would be invalid if it defined an offence as punishable in the courts of the United States which is justiceable only in the courts of the State, that it is not deemed necessary to give the question much consideration, it being clear that if the offence charged in the indictment is punishable only by the State law, then the defendant must prevail upon one or the other, or both of the other two questions. Reasonable doubt upon that proposition cannot arise, and it is equally clear that if the answers to the first and third questions certified are adverse to the theory of the defendant, then the answer to the second question must be in the negative, which is all that need be said upon the subject.

Circuit courts have exclusive cognizance of all crimes and offences cognizable under the authority of the United States, except where the acts of Congress otherwise provide, and concurrent jurisdiction with the district courts of the crimes and offences cognizable in those courts. 1 Stat. 79 ; Rev. Stat., sect. 629, p. 112.

Such courts possess no jurisdiction over crimes and offences committed against the authority of the United States, except what is given to them by the power that created them ; nor can they be invested with any such jurisdiction beyond what the power ceded to the United States by the Constitution authorizes Congress to confer, — from which it follows that before an offence can become cognizable in the Circuit Court the Congress must first define or recognize it as such, and affix a punishment to it, and confer jurisdiction upon some court to try the offender. *United States* v. *Hudson*, 7 Cranch, 32 ; *United States* v. *Coolidge*, 1 Wheat. 415 ; 1 Am. Cr. L., sect. 163.

Courts of the kind were not created by the Constitution, nor does the Constitution invest them with any criminal jurisdiction. Even the powers of an express character given to Congress upon the subject embrace only a limited class of well-known offences. Congress may provide for the punishment of

counterfeiting the securities and current coin of the United States, and may pass laws to define and punish piracies and felonies committed on the high seas, and offences against the law of nations. Treason is defined by the Constitution, but it has never been decided that the offender could be tried and punished for the offence until some court is vested with the power by an act of Congress.

Implied power in Congress to pass laws to define and punish offences is also derived from the constitutional grant to Congress to declare war, to raise and support armies, to provide and maintain a navy, and to make rules for the land and naval forces, and to provide for organizing, arming, and disciplining the militia and for governing such parts of them as may be employed in the public service. Like implied authority is also vested in Congress from the power conferred to exercise exclusive jurisdiction over places purchased by the consent of the legislature of the State in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings, and from the clause empowering Congress to pass all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by the Constitution in the government of the United States, or any department or officer thereof.

Power to grant pensions is not controverted, nor can it well be, as it was exercised by the States and by the Continental Congress during the war of the Revolution; and the exercise of the power is coeval with the organization of the government under the present Constitution, and has been continued without interruption or question to the present time.

Five days after the act passed organizing the judicial system of the United States, Congress enacted that the military pensions which have been granted and paid by the States respectively, in pursuance of an act of the United States in Congress assembled, shall be continued and paid by the United States from the fourth day of March last for the space of one year, under such regulation as the President may direct. 1 Stat. 95.

Before that provision expired, to wit, on the 5th of July of the next year, Congress enacted that military pensions granted and paid by the States in pursuance of former acts of Congress,

or of acts passed in the then present session, to invalids who were wounded or disabled during the late war, shall be continued and paid by the United States for one year from the 4th of March preceding the approval of the act.   Id. 129.

Seven years' half-pay of certain deceased officers was granted to their widows or orphans, which grant it was supposed was barred by a subsequent resolution; and the Congress, on the 23d of March, 1792, passed an act that the right to prosecute the claims should be extended for and during the term of two years from the passing of the act giving the extension, and made further provision for placing other officers, commissioned and non-commissioned, and soldiers and seamen disabled in actual military service during the late war, on the pension list during life or the continuance of such disability. Id. 244.

Reference is made to these early acts of Congress in order to show that the pension system of the country had its origin in the Revolution, and beyond all question was sanctioned by the framers of the Constitution who were members of the first Congress, and enacted the laws for putting the new government into operation.

Other acts of Congress of a like character were passed granting pensions to the officers and soldiers disabled in the war of 1812, and in the Mexican war, and in the more recent war of the rebellion.   Fresh as these laws are in the memory of every one, it is not necessary to refer to the volumes where they are found, as the public statutes of the United States are full of such provisions; nor should it be forgotten that some of these laws throughout the same period have been passed by Congress in favor of the disabled officers and seamen of the navy.

Suppose that is so, still it is insisted that the Circuit Court had no jurisdiction of the offence alleged in the indictment, which involves both the construction of the act of Congress defining the offence, and the power of Congress to pass the law, which latter point will more appropriately be considered when the third question presented for decision is examined.

Guardians having the charge and custody of the pensions of their wards, who embezzle the same in violation of their trust,

or fraudulently convert the same to their own use, are the material words of the enactment; and the proposition is, that the Circuit Court has no power to punish the defendant for any appropriation by him of said money after its legal payment to him as such guardian, which to a demonstration is a mistake, if the act of Congress is a valid and constitutional act, for several reasons, each of which is sufficient to show that the proposition is unsound: 1. Because the guardian has not, and cannot have, in the nature of things, the charge and custody of the pension-money of his ward until it is paid to him by the government. 2. Because he cannot, within the meaning of the act of Congress, embezzle the pension-money of his ward, or fraudulently convert the same to his own use in violation of his trust, before the same is paid to him as such guardian. 3. Because, if the theory of the defendant is correct, the act of Congress defines certain acts of such a guardian as an offence that in the nature of things is practically impossible, which would show that the act of Congress is an absurdity. 4. Because the plain import and obvious meaning of the language of the provision contradicts the theory of the defendant, and shows that Congress intended to protect the pension-money as a fund for the ward after it was paid to the guardian, and to punish the depositary if he embezzled or fraudulently converted it to his own use before he rendered an account for it or expended it for the benefit of the ward, as the law required.

Viewed in the light of these suggestions, it follows that the offence set forth in the indictment is well defined in the act of Congress, and that the offence as there defined, if the act of Congress is valid and constitutional, consists of embezzling the pension of the ward by the guardian, or of fraudulently converting the same to his own use after the same is paid to him by the government.

Argument to show that the Circuit Courts have jurisdiction of offences against the authority of the United States since the passage of the Judiciary Act is unnecessary, as all the offences cognizable in those courts have been defined since the Judiciary Act went into operation. Grant all that, and still the question is, whether the act defining the offence set forth in the indictment is a valid and constitutional act.

Briefly stated, the objections to the constitutionality of the law are as follows; 1. That it is municipal in its character, operating directly on the conduct of individuals, and that it assumes to take the place of ordinary State legislation.  2. That if Congress may pass such a law, then Congress may assume all the police regulations of the States, and work their entire destruction.  3. That inasmuch as the State law authorized the guardian to receive the pension-money, the defendant cannot be subjected to an indictment under an act of Congress for embezzling it after he lawfully received it.  4. That matters of police regulation are not surrendered to Congress, but are exclusively within State legislation.  5. That a guardian is a State officer, and as such is not subject to the laws of Congress in the performance of his duties.

Power to protect the fund from misappropriation, fraud, and unauthorized conversion to the use of another, and to secure its safe and unimpaired transmission to the beneficiary, has been·claimed and exercised through the whole period since Congress, under the Constitution, commenced to grant such bounties.

Provision was made by the sixth section of the act of the 25th of March, 1792, that no sale, transfer, or mortgage of the whole or any part of the pension or arrearages of pension payable to any non-commissioned officer, soldier, or seaman, before the same shall become due, shall be valid ; and the same section also provided that every person claiming such pension or arrears of pension, or any part thereof, under power of attorney or·substitution, shall, before the same is paid, make oath or affirmation before some justice of the peace of the place where the same is payable, that such power or substitution is not given by reason of any transfer of such pension or arrears of pension ; and any person who shall swear or affirm falsely in the premises, and be thereof convicted, shall suffer as for willful and corrupt perjury.  1 Stat. 245.

Three of the sections of that act were repealed by the revisory act of the 28th of February, 1793, but the sixth section, with its penal clause, was left in full force.   Id. 324.

Officers of the navy, seamen, and marines, disabled in the line of their duty, were declared to be entitled to pensions for

life or during their disability by the act of the 3d of March, 1803, and by the subsequent act of the 10th of April, 1806, the operation of the act was extended to the widows and children of such officers, seamen, and marines. 2 id. 376.

Rules and regulations for prosecuting applications to obtain the benefits of the act were prescribed, and the eighth section of the act, like the sixth section of the act of the 23d of March, 1793, prohibits the sale, transfer, or mortgage of the whole or any part of the pension before the same becomes due, and requires every person claiming such pension under a power of attorney or substitution to make oath or affirmation, before the same is paid to them, that the power of attorney or substitution is not given by reason of any transfer of such pension ; and the provision is, that if the affiant shall swear or affirm falsely in the premises, and be thereof convicted, he shall suffer as for wilful and corrupt perjury.

Regular allowances paid to an individual by government in consideration of services rendered, or in recognition of merit, civil or military, are called pensions. Military pensions are divisible into two classes, — invalid and gratuitous, or such as are granted as rewards for eminent services, irrespective of physical disability. Laws of the kind in this country granting invalid pensions were passed by the States during the Revolution, and were followed by similar provisions passed by the Continental Congress. 1 Laws U. S. (Bioren & Duane's ed.) 687–692; 2 id. 73.

Many of those provisions were in force when the Constitution was adopted, and some of the early laws of the Congress under the new Constitution were passed to fulfil and make good the obligations which were acknowledged by continental legislation. Such laws had their origin in the patriotic service, great hardships, severe suffering, and physical disabilities contracted while in the public service by the officers, soldiers, and seamen who spent their property, lost their health, and, gave their time for their country in the great struggle for liberty and independence, without adequate or substantial compensation.

Power existed in the States before the Constitution was adopted, and it would serve to undermine the public regard

for our great charter if it could be held that it did not continue the same power in the Congress.. Even the respondent admits that Congress may declare war, raise and support armies, provide and maintain a navy, and make rules for the government and regulation of the land and naval forces ; and it is equally clear that Congress may make all laws which shall be necessary and proper for carrying the powers granted by the Constitution into execution.

Concede that, and it follows that Congress may grant such donations to the officers, soldiers, and seamen employed in such public service. Bounties may be offered to promote enlistments, and pensions to the wounded and disabled may be promised as like inducements. Past services may also be compensated, and pensions may also be granted to those who were wounded, disabled, or otherwise rendered invalids while in the public service, even in cases where no prior promise was made or antecedent indúcement held out. Enactments of the kind, it is conceded, may be valid ; and if so, it is difficult to see why Congress may not pass laws to protect the fund appropriated for such a beneficiary of the government, certainly until it reaches his hands. Congress in many cases has passed such · laws, and provided that the money shall not be transferable or subject to attachment, levy, or seizure, even after it has been received by the agent, attorney, or guardian.

Conclusive support to that proposition is found in the fourth section of the act of the 15th of May, 1828, which provides that the pay of the pensioners therein named shall not in any way be transferable or liable to attachment, levy, or seizure by any legal process whatever, but shall inure wholly to the personal benefit of the officer or soldier entitled to the same by this act. 4 Stat. 270.

Exemptions of certain properties of small value, such as personal apparel and tools of trade, existed in the State laws ; but no court ever called the Federal exemption in question because it was something in addition to what was contained in the State law, nor because the operation of the act of Congress was extended beyond the time when the money was received by the agent, attorney, or guardian of the pensioner. ·

Payment of pensions under the second section of the act

passed the next year might be made to the widow of the deceased pensioner or to her attorney, or, if he left no widow or no one then living, to the children of the pensioner or to their guardian or his attorney, and if no child or children, then to the legal representatives of the deceased.   Id. 350.

Authority was also given to the Secretary of the Treasury by the act of the 15th of June, 1832, to pay pensions to the pensioners, or their authorized attorneys, at such places and times as he might direct; but the same section provided that the pay of the pensioner should not be in any way transferable or liable to attachment, levy, or seizure by any legal process whatever, and that it should inure wholly to the personal benefit of the individual entitled to the same.   Id. 356; 5 id. 128.

Certain duties in that regard, previously devolved upon the Secretary of the Treasury, were, by the resolution of the 28th of June, 1832, transferred to the Secretary of War.   Five years' half-pay and pensions were granted to certain widows of the officers and soldiers of the Revolution by the act of the 7th of July, 1838; and the second section of the act provided that no pledge, mortgage, sale, assignment, or transfer of any right, claim, or interest in any annuity, half-pay, or pension granted by the act shall be valid, nor shall the half-pay, annuity, or pension granted by the act, or any former act of Congress, be liable to attachment, levy, or seizure by any process in law or equity, and adds, as in the prior acts cited, that it shall inure wholly to the personal benefit of the pensioner or annuitant entitled to the same.   Id. 303.

Ten years later, additional relief was granted to the widows of officers and soldiers of the Revolution, and the second section of the act contains the same prohibition and regulations as those contained in the prior act.   9 id. 266.

Without more, these selections from the almost innumerable list of acts passed granting pensions are sufficient to prove that throughout the whole period since the Constitution was adopted it has been the policy of Congress to enact such regulations as will secure to the beneficiaries of the pensions granted the exclusive use and benefit of the money appropriated and paid for that purpose.   Other legislation of Congress may also be referred to confirming that proposition.

Pensioners of the kind are, in certain aspects, wards of the United States, and the legislation of Congress already reviewed shows that the national legislature has been constant and vigilant in endeavors to protect their interest and secure to them the use of the annuities and pensions granted in their behalf. For the same purpose and to the same end, Congress, on the 14th of July, 1862, prescribed the fees to be charged by agents and attorneys for making out and causing to be executed the papers necessary to establish claims for such pensions, bounty or other allowance, and provided that if any agent or attorney in such a case shall demand or receive any greater compensation than the act allows, he shall be deemed guilty of a high misdemeanor, and be punished as therein provided.   12 id. 568.

Stated fees were allowed to agents and attorneys by that act; but Congress, two years later, passed a supplemental act, which allows to such agents or attorneys a fixed sum instead of fees. By that provision they are allowed ten dollars in full for all service in procuring a pension; and the provision is, that if the agent or attorney shall demand or receive any greater compensation for his services, or agree to prosecute any claim for a pension, bounty, or other allowance under the act, on the condition that he shall receive a per centum upon any portion of the amount of such claim, or shall wrongfully take from a pensioner or other claimant the whole or any part of the pension or claim allowed and due to such pensioner or claimant, he shall be deemed guilty of the offence there defined, and be punished as therein prescribed.   13 id. 389.

Regulations somewhat different in certain respects are made in the supplementary act of the 8th of July, 1866, and some of those contained in the two preceding acts are repealed; but every one of the provisions of those acts intended to give protection to pensions or bounties to be paid to the pensioner are either left in full force, or are re-enacted in the supplemental act in the same or equivalent words.   14 id. 56.

Prior regulations having proved inadequate to effect the intention of the law-makers that the pension should inure solely to the benefit of the pensioner, Congress, on the 8th of July, 1870, enacted that hereafter no pension shall be paid to any person other than the pensioner entitled thereto, nor otherwise

than according to that act, and that no warrant, power of attorney, or other paper executed or purporting to be executed by any pensioner to any attorney, claim-agent, broker, or other person, shall be recognized by any agent for the payment of pensions, nor shall any pension be paid thereon, subject to two provisos: 1. That payment to persons laboring under legal disabilities may be made to the guardian of such persons in the manner the act provides. 2. That pensions payable in foreign countries may be made according to the provisions of existing laws.

Provision is also made by the seventh section of the act that the fee of agents and attorneys for the preparation and prosecution of a claim for pension or bounty land, under any act of Congress granting the same, shall not exceed in any case the sum of twenty-five dollars, and the eighth section makes it a misdemeanor to demand, receive, or retain any greater compensation for such services in any particular case. 16 id. 195.

Enough appears in these references to the legislation of the Congress under the Constitution to show that throughout the entire period since its adoption it has been the unchallenged practice of the legislative department of the government, with the sanction of every President, including the Father of the Country, to pass laws to prevent the diversion of pension-money from inuring solely to the use and benefit of those to whom the pensions are granted. With that view, sales, pledges, mortgages, assignments, and every other kind of conveyance have been prohibited. Agents employed to collect the money have been required to make oath that they have no interest in such money by any such pledge, mortgage, transfer, agreement, or arrangement, and that they know of none, and provision has several times been made for their punishment if they swear falsely.

Most of these regulations have been enacted to prevent agents, attorneys, and guardians from withholding the fund or converting the same to their own use before it passes into the hands of the beneficiary; but Congress has gone further, and passed laws exempting the money from attachment, execution, and seizure by any legal process in law or equity. No question of such exemption is involved in the present case; but if Congress

may legislate to protect the fund from the grasp of creditors before it reaches the beneficiary, none, it is presumed, will deny the power of Congress to legislate to the end to prevent the agent, attorney, or guardian from converting the same to his use.

Any other argument is hardly necessary to show that the act of Congress in question is a valid and constitutional law ; but if more be needed, it will be found in the decisions of the courts, which are numerous and decisive in support of the same proposition.

State courts in more than one instance have decided that money received as pension from the United States is not liable to attachment, levy, or seizure by or under any legal or equitable process whatever. Congress has the power, says Justice Peters, to attach such condition to the grant of the bounty beyond all doubt ; and the court held that the language of sect. 2, in the act of June 6, 1866, was comprehensive enough to exempt such money from any such attachment, levy, or seizure under State laws. *Eckert & Co.* v. *McKee, &c.,* 9 Bush (Ky.), 355.

It is undoubtedly competent for the United States, said Judge Hoar, to attach such conditions as they may see fit to the grant of a pension, and to fix by law the time and manner in which the property shall finally pass to the pensioner. *Kellogg* v. *Waite and Trustee,* 12 Allen (Mass.), 530.   But the court in that case held that the rule did not apply to the money after the same had passed into the hands of the pensioner, which is a question that does not arise in this case.

Sects. 12 and 13 of the Pension Act of July 4, 1864, prescribed the fees of agents employed to collect pensions, and imposed a penalty for receiving a greater fee than that prescribed. Marks was indicted for a violation of that provision, and by the report of the case it appears that he had demanded and received an excess of fees beyond what the act allowed, and he contended that the act was unconstitutional.   Hearing was had; and Judge Ballard overruled the defence, holding that the power of Congress for the protection of both persons and things was coextensive with their powers of legislation ; that if they grant pensions to meritorious officers, soldiers, and sea-

men, or to their widows, they may by all suitable laws guard and protect the fund thus devoted from being diverted from its object by either the craft or the extortion of unscrupulous agents. *United States* v. *Marks*, 2 Abb. (U. S.) 534; s. c. 10 Int. Rev. Rec. 42; *United States* v. *Bennet*, 12 Blatchf. 352.

Armies may be raised and supported by Congress, and under this grant of power, says Judge Withey, Congress may enact laws making it an offence punishable in the national courts to detain from a military pensioner any portion of a sum collected in his behalf as his pension. *United States* v. *Fairchilds*, 1 Abb. (U. S.) 74; s. c. 16 Am. Law Reg. 306.

Pensioners were forbidden by the act of July 29, 1848, to pledge the certificate by anticipation to an agent employed to secure the pension; and Slosson, J., held that such a pledge, no matter for what purpose or to whom made, was wholly void, and that an action would lie against such agent, if he refused to deliver it up, for the recovery of the value or the damages resulting from its detention. *Payne* v. *Woodhull*, 6 Duer (N. Y.), 169.

Moneys due to a debtor from the public authorities, says Daly, J., cannot be reached by a creditor of a pensioner until actually paid over to the debtor. *Nagle* v. *Slagg*, 15 Abb. Pr. N. S. (N. Y.) 348.

Proof of a grant of a pension certificate to the plaintiff, that it is in the possession of the defendants, and that upon a demand made upon the defendants to deliver it to the plaintiff they refused to do so, not only entitles the plaintiff to recover, but makes a case which renders it impossible, in the nature of things, for the defendants to prove any facts which can operate as a bar to the action, or modify in any respect the plaintiff's right to the whole relief sought. *Moffatt* v. *Van Doren*, 1 Bosw. 610.

An agreement between the widow of a soldier of the Revolution entitled to a pension, and an agent, that the latter was to receive a part of the pension-money for his services in obtaining it, says Nash, C. J., is void, and the money received under such an agreement can be recovered back by the pensioner in an action of assumpsit. *Powell* v. *Jennings*, 3 Jones (N. C.), 547.

A widow entitled to arrears of pension dying and leaving children, says Woods, J., cannot dispose of such arrears by will, nor can her executor, having received the same, retain it for purposes of administration, but each child is entitled to an equal share, and may recover it of the executor in an action for money had and received. *Fogg* v. *Perkins*, 19 N. H. 101 ; *Walton et al.* v. *Cotton et al.*, 19 How. 357.

It is competent for Congress to enforce by suitable penalties all legislation necessary or proper to the execution of power with which it is intrusted, and any act committed with a view of evading such legislation or fraudulently securing its benefits may be made an offence against the United States. *United States* v. *Fox*, 95 U. S. 670.

Acts of Congress granting such donations to officers, soldiers, and seamen, or to their widows or children, in some cases direct that the payment may be made to the attorney or agent of the beneficiary, and in other acts the direction is that the payment may be made to the guardian of the party, and in still another class of such acts the requirement is that the money shall be paid directly to the beneficiary. 4 Stat. 350; 3 id. 569.

For the defendant, it is insisted that when the payment is made to the guardian the money paid ceases to be within the constitutional control of the United States, and that the act of Congress, which enacts that the guardian who embezzles the money or fraudulently converts the same to his own use is guilty of a misdemeanor, is unconstitutional and void. But the court is unhesitatingly of a different opinion, for several reasons : 1. Because the United States, as the donors of the pensions, may, through the legislative department of the government, annex such conditions to the donation as they see fit, to insure its transmission unimpaired to the beneficiary. 2. Because the guardian no more than the agent or attorney of the pensioner is obliged by the laws of Congress to receive the fund; but if he does, he must accept it subject to the annexed conditions. 3. Because the word "guardian," as used in the acts of Congress, is merely the designation of the person to whom the money granted may be paid for the use and benefit of the pensioners. 4. Because the fund proceeds from the

United States, and inasmuch as the donation is a voluntary gift, the Congress may pass laws for its protection, certainly until it passes into the hands of the beneficiary, which is all that is necessary to decide in this case. 5. Because the elements of the offence defined by the act of Congress in question consist of the wrongful acts of the individual named in the indictment, wholly irrespective of the duties devolved upon him by the State law. 6. Because the theory of the defendant that the act of Congress augments, lessens, or makes any change in respect to the duties of a guardian under the State law is entirely erroneous, as the act of Congress merely provides that the pension may be paid to the person designated as guardian, for the use and benefit of the pensioner, and that the person who receives the pension, if he embezzles it or fraudulently converts it to his own use, shall be guilty of a misdemeanor, and be punished as therein provided.

Viewed in the light of these suggestions, it is clear that Congress possessed the power: 1. To define the offence set forth in the indictment, and that the Circuit Court is vested with the jurisdiction to try the offender and sentence him to the punishment which the act of Congress imposed. 2. That the defendant, under the circumstances disclosed in the record, was liable to indictment in the Circuit Court of the United States. 3. That the act of Congress defining the offence set forth in the indictment is a valid and constitutional law enacted in pursuance of the Constitution.

Answers will be certified in conformity with this opinion; that is, the answer to the first question must be in the affirmative, and the answers to the second and third questions in the negative; and it is

*So ordered.*