## In re Miners & Merchants Deposit Bank of Portage

*D. P. Weimer* and *John M. Bennett*, for exceptant; *L. E. Lloyd*, contra.

McKENRICK, J., April 10, 1933.—The Court of Common Pleas of Cambria County, on October 19, 1920, appointed Joseph Lengyel guardian of Joseph Vasselenak, an incompetent United States veteran. The guardian qualified under said appointment and has since acted. From time to time moneys were received from the United States Government, being the proceeds of war risks insurance and compensation, and deposited in the Miners & Merchants Deposit Bank of Portage in the name of Joseph Lengyel, guardian. However, not all of the moneys so received were immediately deposited. Suffice it to say that at the time the Miners & Merchants Deposit Bank came into the possession of the Secretary of Banking of this Commonwealth in December 1930 there was on deposit to the credit of the guardian the sum of $3,022.22 in a savings account. When the first and partial account of the Secretary of Banking was filed, the said Joseph Lengyel, guardian, was awarded the same percentage as other depositors, the assets of the bank not being sufficient to pay all depositors in full. The said Joseph Lengyel, guardian, filed exceptions to the first and partial account, claiming that the accountant erred in awarding a dividend to the said guardian as a common creditor and contending that he should have paid the said guardian's claim in full, as a preferred claim. Testimony was taken before the court and the exception is now before us for disposition.

Briefly stated, the guardian contends that the moneys belonging to the incompetent and deposited in the said bank are moneys of the United States and entitled to priority under section 3466 of the Revised Statutes (31 U. S. C.

sec. 191). The Secretary of Banking, however, resists the claim of the guardian and denies that it is entitled to priority.

Section 3466 of the Revised Statutes (31 U. S. C. sec. 191), provides as follows: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed." If the moneys on deposit in the closed bank are in fact moneys of the United States, it is conceded that the guardian's claim should be paid in full. If the moneys of the guardian on deposit are not moneys of the United States, then the guardian must share ratably with the other depositors in said bank.

We have not been referred to any case in which the courts of Pennsylvania have decided the precise question before us. The exceptant has called our attention, however, to some cases decided in other jurisdictions. In the case of State ex rel. Sorensen v. Security Bank of Creighton, 121 Neb. 521, 237 N. W. 620, the Supreme Court of Nebraska held that money payable by the United States under the War Risk Insurance Acts is money of the United States until it reaches the beneficiary of the fund. In that case the administratrix of the estate of a deceased soldier had a certificate of deposit representing the proceeds of war risk insurance deposited in an insolvent bank. She claimed that she stood in the place of the United States in relation to the fund and had a first lien superior to the rights of the other depositors. The question involved was whether the deposit was money of the United States. The claim of the administratrix was based upon section 3466 of the Revised Statutes (31 U. S. C. sec. 191). In support of the court's decision that the money belonged to the United States, it referred in the opinion to the various safeguards with which the law surrounded the payment of the money. The compensation is not assignable; shall not be subject to the claims of creditors of any person to whom an award is made; and shall be exempt from all taxation. The receiver contended that the funds when paid to the estate of the deceased veteran became assets of the estate. It was decided that the money was in fact money of the United States until it reached the beneficiary, and thus entitled to priority of payment by virtue of the statutes of the United States.

In State ex rel. Spillman v. First State Bank of Pawnee City, 121 Neb. 515, 237 N. W. 623, the guardian of an incompetent World War veteran received compensation and insurance for and on behalf of his ward and deposited the funds in the First State Bank of Pawnee City. The bank became insolvent, and the guardian filed his claim without claiming priority, but the court allowed the claim as a prior lien. Subsequently, however, the guardian filed a petition to intervene and asked that the funds be declared to be Government funds and as such entitled to preference over claims of other depositors by virtue of the Federal statutes. The receiver filed an answer denying that the funds belonged to the Government. In this case also, it was held that the deposit represented funds of the United States and as such were entitled to priority over claims of other depositors. A reading of the opinions in these two cases, which support the contention of the exceptant here, discloses that the great stress laid upon the stringent provisions of the laws relating to war risk insurance has induced the Nebraska court to decide these cases in favor of the claimants asserting priority. The solicitude of the Government in protecting the funds paid from its

treasury and intended for the benefit of the veteran is not inconsistent with ownership in the ward, acting through its guardian.

In the case at bar, the guardian, Joseph Lengyel, was appointed by the Court of Common Pleas of Cambria County under the laws of the State of Pennsylvania, and by the laws of this State he was given the custody and control of the personal estate of his ward and was authorized to collect and receive the money belonging to him. In Wyman, Treasurer, v. Halstead, Admin'r, 109 U. S. 654, the court, quoting from Vaughan et al. v. Northup, Admin'r, 15 Pet. 1, 6, says: "The administrator of a creditor of the government, duly appointed in the State where he was domiciled at the time of his death, has full authority to receive payment and give a full discharge of the debt due to his intestate, in any place where the government may choose to pay it." It was also said in the same case, "We think that Northup, under the letters of administration taken out in Kentucky, was fully authorized to receive the debt due from the government to his intestate; that the moneys so received constituted assets under that administration, for which he was accountable to the proper tribunals in Kentucky."

In Taylor et al. v. Bemiss et al., 110 U. S. 42, Mrs. Bemiss was appointed natural tutrix of her children. It was objected that since moneys of the Government were made payable to Mrs. Bemiss and her children by name, her authority as tutrix under the Louisiana appointment did not authorize payment to her in the District of Columbia. Following the rule in Wyman, Treasurer, v. Halstead, Admin'r, supra, it was held that payment to Mrs. Bemiss as tutrix under the Louisiana appointment was a valid payment, that she was responsible to the minors under that appointment upon receipt of the money by herself, and that it was a matter of accounting with them in her fiduciary character as tutrix. This case and numerous others to which we could refer support the proposition that the Federal Government recognizes the appointment of the representatives of a claimant under the State laws and that payment to such representatives is payment to the person entitled by law to receive the money. Unquestionably, payment to a guardian vests title in the ward and operates to discharge the obligation of the United States in respect of such instalments: Taylor v. Bemiss, supra; Lamar, Exec'r, v. Micou, Admin'x, 112 U. S. 452, 472; State ex rel. Smith v. Board of County Commissioners of Shawnee County, 132 Kan. 233, 243.

In the case of Shippee v. Commercial Trust Company, 115 Conn. 326, 161 Atl. 775, it was held that the conservator of the estate of a mentally incompetent war veteran, in receiving compensation and disability benefits, was an agent of the court appointing him and not the agent of the United States Government. The World War Veterans Act of 1924, ch. 320, sec. 21, 43 Stat. at L. 613 (38 U. S. C. § 450), as amended, provides in part as follows: "Where any payment under this chapter is to be made . . . to a person mentally incompetent, or under other legal disability adjudged by a court of competent jurisdiction, such payment may be made to the person who is constituted guardian, curator, or conservator by the laws of the State or residence of claimant, or is otherwise legally vested with responsibility or care of the claimant or his estate." The court there says (p. 330): "We do not, however, find in the Act any intention, express or implied, that the title to the moneys payable to him is to remain in the United States after they have been paid over to his conservator, and until they have been actually paid into the hands of the ward, or disbursed for his benefit. We find no justification in the Act for the claim that the conservator acts merely as the agent of the government through whom the funds are paid to his ward. A conservator is appointed by the Court of Probate for one who is incapable of managing his affairs, and his duty is to manage the estate of his

ward and to apply it to his support and that of his family. General Statutes, §§ 4815, 4819. The care and management of the ward's estate is primarily entrusted to the Court of Probate and the conservator is in many respects but the arm or agent of the court in performance of the trust and duty imposed upon it. *Johnson's Appeal,* 71 Conn. 590, 598, 42 Atl. 662. The World War Veterans Act recognizes this status of the conservator in the provision that, when he has been derelict in the performance of his duties, the director of the veterans bureau may appear in the court which appointed him and make presentation of such fact."

If a conservator, referred to in the case just cited, or, in Pennsylvania, a guardian, was agent of the United States, there would be no necessity for the Director of the Veterans' Bureau appearing in the court which appointed him, but the United States Government itself would have the power to remove the guardian. The World War Veterans' Act provides for the payment of the benefits due an incompetent veteran to his guardian who may be appointed by the State court. If the guardian were an agent of the Federal Government, his appointment would not be delegated by the Federal Government to the State court. The Federal Government provides the money which is paid to veterans. Whether it be considered as a gratuity to the veteran or as payment of a debt which the Government owes to the veteran, the Government certainly has the right to prescribe the conditions under which the veteran shall receive Government money. It can provide for the safe transmission of the fund from the Federal treasury to the veteran or to his legally constituted representative; it can provide that the moneys shall not be subject to attachment while in transit;' and it may make such other provisions as it may deem necessary to effect safe transmission from the Federal treasury to the person entitled to receive it. None of these conditions is inconsistent with the absolute title and ownership of the money in the hands of the beneficiary or his representative.

The case of United States v. Hall, 98 U. S. 343, has been cited in a number of cases as authority for the proposition that pension moneys belong to the Government until received by the pensioner. In that case the guardian was charged with having embezzled certain moneys belonging to children under the age of 16 for whom the guardian acted. It was decided in this case that Congress had the power to prescribe the punishment for embezzlement by guardians of pension money paid to them in behalf of their wards. The court held that, to insure transmission unimpaired to the beneficiary, the United States might annex such conditions to the donation as it deemed appropriate, that the guardian was bound to accept the payments subject to the terms of the grant, and that Congress had power to protect its gift until it passed into the hands of the beneficiary. Nowhere in the opinion does the court suggest that the United States was the owner of the money 'embezzled. The power of Congress to punish misappropriation is not limited to acts causing loss to the United States: Westfall v. United States, 274 U. S. 256. As was said in the case of State ex rel. Smith v. Board of County Commissioners of Shawnee County et al., 132 Kan. 233, 242, 294 Pac. 915: "We think it would be carrying the Hall decision to a greater length than apparently intended to consider it as holding that the government was in every way in control of and responsible for the pension funds until they reached the hands of the beneficiary through the hands of a guardian. Punishment for an offense is a regulatory right far different from the responsibility of the government for the performance and fulfillment of a business or financial obligation. Would anyone contend that the government still owes the ward of Mr. Hall, the guardian, for the pension money he misappropriated? Does the responsibility rest the same on the government to

finally get the money into the hands of the ward when the guardian embezzles it, as if it were embezzled by a clerk in the pension office when in his hands to send to the beneficiary? Certainly not, and the decision in the Hall case extends the control to that which regulates by supervision and punishment, but not so far as to make the government financially responsible to the ward, which would in effect be a guarantee."

We cannot conceive that the Government would have to pay twice because the guardian might have appropriated to his own use his ward's funds. If the money which the Government sends to its claimants remains the money of the United States until it gets into the hands of the ward himself, and the guardian is the agent of the Government, then the Government would be responsible for the acts of its agent and would be thus required to guarantee the honesty of the agent guardian, or suffer the consequences by paying twice and take its chances of receiving reimbursement from its agent or, in default thereof, punish him by criminal prosecution. We cannot conceive that the Federal Government, in the payment of insurance and compensation, intended that the State courts should appoint agents for the Federal Government. In the thousands of cases which no doubt exist throughout the United States, we would have the anomalous situation of the Federal Government having to represent it persons who are unknown and whose only security is such as has been furnished in the courts of the States which appoint guardians. It has been uniformly held that payment to a legally constituted guardian of a debt due to the ward is payment to the ward himself. If a debtor makes payment of his debt to the guardian legally entitled to receive the same, he is not required to see to the proper application of the money so paid. When a person is incompetent by age or mental disability to receive moneys due him, the law provides for certain qualified persons to act in the place and in the stead of the incompetent. This is exactly what has been done in the present case.

Joseph Vasselenak is in a United States veterans' hospital and because of his incompetency is prevented from dealing directly with the United States Government in respect to the insurance and compensation due him. Under the law the court appointed a guardian, who acts in the place and stead of the incompetent veteran. The general theory of the law with reference to funds and property intended for minors or incompetents is that both title and possession are in the wards while under the charge and control of the guardian. "While the relation between guardian and ward is that of trustee and cestui que trust, the trust is not of such character as to give the guardian the legal title to the ward's estate, but the title remains in the ward, and the possession of the guardian is the possession of the ward": 28 C. J. 1128. "The legal title, however, is in the ward rather than in the guardian; so that upon the death of the guardian the funds of the ward do not pass to his executor, and on a change of guardians no transfer of title takes place. His possession is deemed the possession of the ward": 12 R. C. L. 1123.

There is a further reason why we believe the United States does not retain ownership of the funds, and that is that the statute also provides that under certain conditions the moneys paid to the ward shall, in default of certain designated beneficiaries, escheat to the United States. If the money belonged to the United States in the first instance, there would be no necessity for such a provision. That the title to the fund is vested in the ward is recognized by that provision, and this makes against the contention of the exceptant that the money belongs to the United States.

In Puffenbarger, Guardian, v. Charter, Banking Commissioner, et al., 112 W. Va. 488, 165 S. E. 541, it was contended that the guardian of the beneficiary

of a deceased soldier, who deposited money in a bank which became insolvent, was "a trustee or depositary" of the Federal Government, and that while money remained in his hands it was the money of the United States, entitled to a preference. It was held in this case that the possession of the guardian was the possession of the ward, and that the intervention of the guardian does not leave the pension fund still in the hands of the Government, but when paid to the guardian the title and possession have both passed from the Government. Fortunately, the conflicting decisions in various State courts concerning the interpretation of section 3466 have been called to the attention of the Supreme Court of the United States. On March 13, 1933, the case of Spicer v. Smith, Special Deputy Banking Commissioner, 288 U. S. 430, was decided on a writ of certiorari to the Court of Appeals of Kentucky. Mr. Justice Butler delivered the opinion of the court. The facts in this case are identical with the facts in the case which we have been discussing. Petitioner was a United States soldier in the World War and while in the service suffered permanent mental incompetency. He became entitled to receive from the United States war risk insurance and disability compensation. On September 19, 1919, the County Court of Breathitt County, Ky., appointed for him the guardian above named, who qualified and has ever acted as such. The United States paid to the guardian the instalments due his ward. The guardian deposited them in the Hargis Bank and Trust Company. It became insolvent and on February 5, 1930, under the laws of the State of Kentucky, was taken over by a special deputy banking commissioner and liquidating agent. At that time the guardian had on deposit $6,070.80, derived from such payments. The assets of the bank were not sufficient to pay more than one half the total owing to the depositors. Claiming priority under Revised Statutes, sec. 3466, the guardian demanded payment of his deposit in full. Respondent held that the petitioner was entitled only to share ratably with other creditors and refused to pay. Suit was then brought in the Circuit Court of Breathitt County to enforce the asserted priority. The court gave petitioner judgment as prayed. The Court of Appeals reversed on the ground that the bank was not indebted to the United States on account of the deposit made by the guardian. The Supreme Court says (p. 433): "Petitioner relies upon the clause of § 3466 declaring that whenever any person indebted to the United States is insolvent the debts due to the United States shall first be satisfied. He asserts that, under Acts of Congress later to be considered, the war risk insurance and disability compensation paid to a guardian of an incompetent veteran remains the money of the United States so long as it is subject to his control and suggests that the guardian is a mere instrumentality of the United States for the disbursement of such money for the benefit of the veteran. And he maintains that the deposit here involved is money of the United States and that the bank is indebted to it therefor. . . .

"The guardian, appointed by the county court, was by the laws of the State given the custody and control of the personal estate of his ward and was authorized to collect and receive the money in question. Ky. Stats., § 2030. And unquestionably payment to the guardian vested title in the ward and operated to discharge the obligation of the United States in respect of such installments. . . .

"The provisions for exemption, non-assignability and suspension of payments plainly imply the passage of title from the United States to the veteran. The denunciation of embezzlement by guardians is not inconsistent with that intention. These regulations, like many to be found in pensions laws, disclose a purpose to safeguard to beneficiaries the appropriations and payments made for

their benefit *(United States v. Hall,* 98 U. S. 343, 353. *Westfall v. United States,* 274 U. S. 256) and evince special solicitude for the protection of veterans who by reason of mental incompetency are unable to protect themselves. The clauses subjecting such payments to claims of the United States against the veteran and providing for escheat to the United States make against petitioner's claim. Neither would be appropriate or necessary if the money paid to such guardian continued to belong to the United States until actually disbursed by him for the veteran's benefit.

"Petitioner cites *United States v. Hall, supra.* The question there was whether Congress has power to prescribe punishment for the embezzlement by guardians of pension money paid them in behalf of their wards. The indictment showed that the money alleged to have been embezzled was the property of the accused guardian's ward. The court held that to insure transmission unimpaired to the beneficiary the United States might annex such conditions to the donation as it deemed appropriate and that the guardian was bound to accept the payment subject to the terms of the grant and that Congress had power to protect its gift until it passed into the hands of the beneficiary. There is no suggestion in the opinion that the United States had any interest as owner in the money embezzled. The power of Congress to punish such misappropriation is not limited to acts causing loss to the United States. *Westfall v. United States, supra,* 258-259. Petitioner also cites *Bramwell v. U. S. Fidelity & G. Co.,* 269 U. S. 483. But in that case the United States itself was the guardian and through its officer, the superintendent of an Indian reservation, made the deposit which upon insolvency of the bank was held a preferred claim under § 3466. The case is not in point, as here the guardian was appointed pursuant to state law to act for and on behalf of his ward. He was not an agent or instrumentality of the United States. *Shippee v. Commercial Trust Co.,* 115 Conn. 326, 161 Atl. 775. *Puffenbarger v. Charter,* 112 W. Va. 488; 165 S. E. 541. *State ex rel. Smith v. Shawnee County Comm'rs, supra.* It results that the deposit in question does not belong to the United States and, as indebtedness to it is essential to priority, the guardian's claim under that section is without merit. Other contentions made by petitioner are so plainly inapplicable here as not to require discussion."

The question before the Supreme Court arose in the interpretation of a Federal statute. While it is true this controversy has arisen in a State court, the question involves consideration and interpretation of a Federal statute. The interpretation given to this statute by the Supreme Court satisfies us by its reasoning no less than by its authority. We are, therefore, bound to conclude that when the money involved in this present case was paid by the United States Government to the legally constituted guardian, the exceptant here, it was payment to the ward and that it is no longer money of the United States. The Miners & Merchants Deposit Bank is, therefore, not indebted to the United States so that any claim for priority can be asserted under section 3466 of the Revised Statutes. The exceptant is therefore not a preferred creditor but must share ratably with all the other creditors of said bank, and his exception to the account of the Secretary of Banking must be dismissed.

As we indicated in the beginning of this opinion, the situation which has confronted us has never arisen in Pennsylvania so far as the reported cases show. Very respectable authority in other States supported the contention of the exceptant. In view of the importance of the question involved to the Department of Banking as well as to other claimants, we think the exceptant very properly brought the matter before us for consideration and decision. We feel that the

costs incident to this proceeding should be paid out of the funds in the bank. We therefore make the following decree:

### Decree

And now, April 10, 1933, after argument and due consideration, the exception heretofore filed is dismissed, and the Secretary of Banking is directed to pay the costs incident to this proceeding out of the funds in his hands belonging to the bank.

From Henry W. Storey, Jr., Johnstown, Pa.