C. B. BUTLER, ADMINISTRATOR OF THE ESTATE OF ALBERT J. RAMSEY, DECEASED, APPELLANT, v. S. L. CANTLEY, COMMISSIONER OF FINANCE AND DONIPHAN STATE BANK, RESPONDENTS.—47 S. W. (2d) 258.

Springfield Court of Appeals. March 7, 1932.

*Fulbright & Sheppard, C. B. Butler* and *C. T. Bloodworth* for appellants.

1048

*Eugene W. McGee* and *Lawrence E. Tedrick* for respondents.

BAILEY, J.—This is a suit tax by the administrator of the estate of Albert J. Ramsey, deceased, to have certain funds deposited by him in the defunct Doniphan State Bank, derived from the proceeds of War Risk Insurance, declared to be preferred. The claim was duly filed before S. L. Cantley, Commissioner of Finance in charge of said bank. The following is an agreed statement of facts: "Chas. B. Butler is the duly appointed, qualified and acting administrator of the estate of Albert J. Ramsey, deceased, under and by virtue of the appointment made by the probate court of Ripley county, Mis-

souri, and was such on the 21st day of November, A. D. 1930, and had been for sometime prior thereto; that as such administrator of the estate of Albert J. Ramsey, deceased, he had in his possession, under his control and custody the sum of $5330.30, which money was received by him as such administrator from the War Risk Insurance Department of the United States Treasury through the U. S. Veteran's Bureau; that said sum of $5330.30 was the amount received by such administrator as the proceeds of an insurance policy held by Albert J. Ramsey, his mother being the beneficiary in said policy; that his mother died before the distribution of said money was made and that the brothers and sisters of the said Albert J. Ramsey are now the beneficiaries of said policy under the law. That such sum of money was deposited in the Doniphan State Bank of Doniphan, Missouri, at the date of its closing, to-wit, November 21, 1930, and that thereafterwards, within the four months time specified in the notice to creditors of the Doniphan State Bank, between the dates of December 24, 1930, and April 24, 1931, the claimant, Chas. B. Butler filed proof of his claim against the Doniphan State Bank with the Bank of Doniphan, Special Deputy Commissioner of Finance, in charge of the liquidation of the Doniphan State Bank; that claimant in his claim set up and urged that it be approved and allowed as a preferred claim; that the claim was duly allowed by the Special Deputy Commissioner of Finance in charge as a general or common claim only, and refused and denied by it as a preferred claim, but certified it to the circuit court of Ripley county, Missouri, as a claim to be approved and allowed by the circuit court of Ripley county, Missouri, as a general or common claim in the sum of $5330.30. That a copy of said claim is hereto attached and marked as 'Exhibit A.'

"That at the date of the closing of the said Doniphan State Bank, to-wit, November 21, 1930, it had on hand in cash in its vaults or due from other bank on demand funds amounting to more than the amount of this claim, $5330.30."

Plaintiff also offered evidence that at the time he deposited said money in the Doniphan State Bank he informed Mr. Wright, agent of the surety company which paid him the money and the man who wrote the bond of the administrator and who was at the same time cashier of said bank, that the money was obtained from War Risk Insurance payable to the estate of Albert J. Ramsey and that, "when I deposited it as administrator of his estate I told Mr. Wright it was a trust fund and it was deposited in my name as administrator, etc," Mr. Wright admitted also that he knew, as cashier, that this administrator's account consisted of funds derived from the government to be paid out to the heirs of Albert J. Ramsey, deceased.

The claim was allowed as a common or ordinary claim by the finance commissioner, who thereafter certified same to the circuit court. The latter court, after hearing the evidence, likewise allowed the claim as a common or ordinary claim and disallowed it as a preferred claim. Plaintiff has appealed from that judgment.

It is conceded on both sides that if the funds deposited by the administrator were monies belonging to the government of the United States of America, within the meaning of section 3466 U. S. S. L., such funds are entitled to a preference and must be first satisfied. That statute reads as follows: "Section 3466. (Priority of debts due United States established.) Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed. [R. S.]"

The money here received by the administrator and deposited by him in the Doniphan State Bank was payable to the estate of the deceased soldier of the world war under and by virtue of the terms of the War Risk Insurance Act, which as last amended, in part, reads as follows: "If no person within the permitted class be designated as beneficiary for yearly renewable term insurance by the insured either in his lifetime or by his last will and testament or if the designated beneficiary does not survive the insured or survives the insured and dies prior to receiving all of the two hundred and forty installments or all such as are payable and applicable, there shall be paid to the estate of the insured the present value of the monthly installments thereafter payable, said value to be computed as of date of last payment made under any existing award."—"Provided further, That in cases when the estate of an insured would escheat under the laws of the place of his residence the insurance shall not be paid to the estate but shall escheat to the United States and be credited to the military and naval insurance appropriation. This section shall be deemed to be in effect as of October 6, 1917." [Pp. 227-228, 1925, Sup. U. S. S., 38 U. S. C. A., p. 252, Art. 514.]

There is a similar provision for other insurance plans. In order to properly construe the foregoing sections of the Federal Statutes the purpose of the original War Risk Insurance Act, as expressed in the act itself, is of great importance. That purpose is, "to give to every commissioned officer and enlisted man—when employed in ac-

tive service under the War Department or Navy Department protection for themselves and their dependents." [43 Stat. L. 624.] It is further provided that the insurance shall be payable only to a, "spouse, child, grandchild, parent, brother, sister, uncle, aunt, nephew, niece, brother-in-law or sister-in-law." [43 Stat. L. 624.] In order to further protect the rights thus secured to the permitted class the statute contains the further provision that, "The compensation, *insurance,* and maintenance and support allowance payable under Parts, I, II, III, IV, respectively, *shall not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made under parts II, III or IV; and shall be exempt from all taxation."* [Italics ours.]

Considering all these various provisions of the law, it is apparent that the Congress of the United States gave of its bounty in order to provide insurance for a class of its citizens, namely, soldiers serving in defense of their country, who might otherwise be unable to provide for their families and dependents. In order to accomplish that purpose and assure to those soldiers and dependents that the money would go for the sole benefit of that named class of persons, the assured himself could make no assignment thereof, no creditor could assert a claim against the fund and no State or municipality could levy a tax of any kind on such property. The law did permit the soldier to name the beneficiary within the limits of the permitted class. In this case the soldier named his mother as beneficiary, but although she survived him, she never lived to draw any part of the money, but the commuted value, as provided by law, was turned over to the soldier's administrator. However, the safeguards placed around the fund remained in force. It was not subject to the claims of creditors and could not be taxed. The government retained a further interest and control over the fund, i. e., in the event there were no beneficiaries the fund should escheat to the government of the United States. We use the word beneficiaries advisedly. While the Federal Statute does not use the term "beneficiaries" in the escheat clause, it does provide that in all cases where the estate of the insured would "escheat under the laws of the place of his residence the insurance shall not be paid to the estate but escheat to the United States." It seems obvious that after having provided that the insurance could not be subjected to claims of creditors nor the lien of taxes, the fund would escheat when the purpose for which it was provided failed or in other words when there were no beneficiaries of the permitted class or other persons entitled to take under the laws of descent, although there might be creditors or other persons having a claim. Thus, in the case of Perrydore v. Hester (1926), 215 Ala. 268, 110 So. 403, it was held that the section

providing that the commuted value shall be payable to the estate of the deceased soldier when the named beneficiary may die before receiving all monthly installments, does not affect the exemption of the insurance from debts of the insured. The fund, after payment to the estate of insured, is likewise not subject to tax. [In re Sabin, 227 N. Y. Sup. 120.]

It is argued that there being brothers and sisters living the government had no further interest in the fund after payment to the administrator and that the title to the money vested immediately in the heirs of the decedent. But the weight of authority seems to hold to the view that the persons who receive the money take as beneficiaries under the policy and not as heirs. [In re Estate of Hallbom, 179 Minn. 402, 229 N. W. 344; State ex rel. Sorensen v. Security Bank of Creighton (Neb.), (1931), 237 N. W. 620.]

It is also held that where war risk insurance becomes payable to the estate of a deceased soldier, the proceeds are not assets of the estate as such, but the estate is a mere conduit for the payment of the fund to the persons designated by statute. [Fisher's Estate, 153 Atl. (Pa.) 736.] In this connection it is held in 5 Dec. U. S. Comp. Gen. 397 (1925), that where administration of the estate of an insured is refused by a State, the Veteran's Bureau may properly determine the individual heirs entitled to payment pursuant to section 303 of the Act of 1924, as amended by the Act of 1925, supra.

In the case of State ex rel. Sorensen v. Security Bank of Creighton, supra, the Supreme Court of Nebraska had before it the identical question here presented. After reviewing the authorities and construing the various pertinent statutes, that court reaches the conclusion that ''the administrator holds the money for a certain definite purpose only; if that purpose fails it reverts to the United States. It is the money of the United States until it reaches the beneficiary, intended by the trust created. The Congress of the United States created a channel through which the money is to reach the dependents of the veteran. It must not be diverted from that channel. It cannot be so diverted. As money of the United States, it is entitled to priority of payment by virtue of the statutes of the United States.'' [237 N. W. l. c. 622.]

We are impelled to agree with the conclusions there reached, although we do not agree to the statement in that opinion that the fund in the hands of the administrator is payable only to those in the so called permitted class. Under the amendment of March 4, 1925 (Chap. 553, 43 Stat. at L. 1310), to section 303 of the Act of June 7, 1924, the limitation of payment to those of the permitted class seems to have been intentionally omitted and as a result the beneficiaries are to be ascertained under the State law of descent

and distribution, and not limited to the permitted class. [Sec. 14 of the Amendment of March 4, 1925.] [Pinova v. Pinova, 202 Ia. 855, 211 N. W. 246, 55 A. L. R. 570 and note.]

It is our opinion that the fund paid to the administrator is preferred because it was a special fund, known to be such, payable to a certain class of individuals, and monies belonging to the United States of America until it arrived in the hands of the intended beneficiaries of that fund, within the meaning of the statute disposing of that fund.

The judgment of the trial court is therefore reversed with directions to set aside said judgment entered for defendant and enter a judgment for plaintiff declaring said fund deposited by him to be a preferred claim against the assets of the Doniphan State Bank, now in the hands of S. L. Cantley, Commissioner of Finance of the State of Missouri. *Cox, P. J.,* and *Smith, J.,* concur.