IN THE MATTER OF THE LIQUIDATION OF HOME SAVINGS BANK: CLAIM OF U. S. FIDELITY AND GUARANTY COMPANY.

(Filed 29 March, 1933.)

**Banks and Banking H d—Funds paid guardian by Veteran's Bureau under War Risk Insurance Act held not to constitute preferred claim.**

The U. S. Veterans' Bureau paid the proceeds of certain War Risk Insurance to a bank which had been duly appointed guardian for the deceased soldier's minor children and which had duly executed guardianship bond with sufficient surety. The bank deposited the sums in its sav-

ings department and commingled them with its regular deposits, and later was placed in a receiver's· hands for liquidation. A substitute guardian was appointed, and the surety on the bank's guardianship bond paid the amount of the deposit to the substituted guardian and was assigned the substituted guardian's rights against the bank. *Held,* the surety was not entitled to a preference for the amount of the guardianship deposit, such sum not being an amount due the U. S. Government (31 U. S. C. A., sec. 191), the Government having discharged its obligation by payment of the sum to the guardian, and the title to the sum having passed to it. C. S., 2169.

APPEAL by petitioner, U. S. Fidelity and Guaranty Company, from *Devin, J.,* at October Term, 1932, of NEW HANOVER. Affirmed.

The agreed facts: United States Fidelity and Guaranty Company, and Gurney P. Hood, Commissioner of Banks, agree to the following facts:

1. That United States Fidelity and Guaranty Company is a Maryland corporation, and authorized to execute guardian bonds in North Carolina. That on 20 January, 1931, and for a long time prior thereto, Home Savings Bank was a North Carolina banking corporation.

2. That on 20 January, 1931, the Corporation Commission of North Carolina, under and by virtue of the provisions of section 218(c), Consolidated Statutes, took charge of said Home Savings Bank, on account of insolvency or for one or more other causes set out in section 218(b) and paragraph 1 of section 218(c), Consolidated Statutes, and Robert Strange was appointed as.liquidating agent.

3. That thereafter by virtue of the provisions of chapter 243, Public Laws of 1931, and section 218(c), Consolidated Statutes, Gurney P. Hood, Commissioner of Banks, took charge and Robert Strange continued as his agent until 1 January, 1932, when L. P. Harrell was appointed agent.

4. That the liquidating agent does not have in his possession assets belonging to said bank of sufficient value to pay all the debts due by said bank in full—and this condition existed at the time the Corporation Commission took charge.

5. Letters of guardianship were issued to Home Savings Bank as guardian for Benj. Morris Clay, Dorothy Lucile Clay and Thomas Judson Clay, minor children of Benjamin M. Clay (also known as Bennie Clay) a deceased World War veteran, who carried a policy of War Risk Insurance issued by the United States on his life. Said guardian was appointed by the clerk of the Superior Court of Pender County, North Carolina, on 25 July, 1930, and posted bond in the sum of $2,000 for the faithful performance of its trust, with United States Fidelity and Guaranty Company as surety.

6. That, by reason of an award of compensation and insurance, under the compensation and insurance laws of the United States relating to

World War veterans, the guardian received on 4 November, 1930, from the United States Veterans' Administration the sum of $171.85, for and on behalf of each of said beneficiaries. Also, thereafter, monthly payments of $13.33 compensation, and $8.33 insurance, up until the closing of said bank. That, on 4 November, 1930, Home Savings Bank, as guardian, deposited said funds in three separate savings accounts in Home Savings Bank as an investment for and on behalf of said beneficiaries, and made deposits with said bank at various times of the funds received, and on 20 January, 1930, when the Corporation Commission took charge, the records of said bank showed the balances in the various accounts as follows:

Savings Account No. 18112, 'Home Savings Bank, guardian for Dorothy Lucile Clay' balance of $179.08.

Savings Account No. 18113, 'Home Savings Bank, guardian for Benjamin Morris Clay,' balance of $179.08.

Savings Account No. 18114, 'Home Savings Bank, guardian for Thomas Judson Clay,' balance of $169.56.

Total deposits of $527.72. It is agreed that the claims may be consolidated and heard together.

7. That the officers of said bank knew at the time of the receiving of the deposits, from what source they came, and that they were the proceeds of War Risk Insurance, paid by the United States Veterans' Bureau. That all funds involved in this suit were derived from payments made by the United States Veterans' Bureau for and on behalf of said beneficiaries, under an insurance policy issued upon the life of Bennie Clay, a soldier in the United States Army. That all checks were issued in the name of the guardian as legal guardian of the beneficiary in question. Copy of one of the checks follows:

117,617

United States Veterans' Bureau.

Washington, D. C.

V    Treasurer of the United States.

(Seal.)                15-51                28 October, 1930.

Pay in dollars one hundred five 21/100 ..................................... ..$105.21

To the order of Home Savings Bank of Wilmington, N. C.
XC 3466. As LGL GDN of Thomas Judson Clay, Wilmington, N. C. Adj. to 30 Sept., 1930

J. B. Schommer, Disbursing Clerk.
By C. A. Ball, Deputy Disbursing Clerk.

Object for which drawn: Compensation.                11-666.

8. That, on or about 31 March, 1931, the liquidating agent filed an account of 'Home Savings Bank, guardian for Benjamin Morris Clay, Dorothy Lucile Clay and Thomas Judson Clay,' showing that said bank was indebted to the owners of the listed deposits in the total amount of $527.72—said accounts showed that the receipts were derived from the United States Veterans' Bureau. At the same time the liquidating agent tendered resignation of Home Savings Bank, guardian as aforesaid, and asked the appointment of a new guardian to protect the estate. Letters of guardianship were issued on or about 1 April, 1931, to North Carolina Bank and Trust Company as guardian for said minors.

9. That North Carolina Bank and Trust Company, guardian, filed with the liquidating agent of Home Savings Bank on forms furnished for such purposes, its certificates of proof of claim in the sum of $527.72. That United States Fidelity and Guaranty Company, petitioner, paid $527.72, the amount on deposit, to the guardian and took an assignment and subrogation receipt on 24 July, 1931. That petitioner filed the assignment with the liquidation agent on the regular form furnished for such purpose on 4 August, 1931. That, in the claim so filed, no claim was made that the moneys were government funds and entitled to priority as such.

10. That said claims were duly classified by the liquidating agent as ordinary claims for deposit and the owners thereof were declared entitled to participate in all dividends as general or unsecured creditors of said bank. That the question as to whether such funds were government funds and entitled to priority was not raised nor determined.

11. That a dividend of 10 per cent was declared by the liquidating agent on 9 October, 1931, but petitioner did not accept said dividend. That a petition of intervention was filed by United States Fidelity and Guaranty Company on 1 April, 1932, asking for the priority to which it believed the claims were entitled. That a second dividend of 10 per cent was declared on 8 April, 1932, but petitioner did not accept same.

12. That the subject-matter of this controversy consisting of cash only was received by the Home Savings Bank, by it intermingled with other moneys of said bank, and was at no time separated or set aside from its deposits.

13. That at the time the said bank failed and the Corporation Commission took charge thereof, there was on hand in cash and passed to the liquidating agent, the sum of $3,404.09. That at no time after the receipt of said funds was cash on hand less than $527.72. After the said liquidating agent took charge, and before the filing of the petition in this cause, there has been filed with the liquidating agent claims seeking a preference, which had been allowed and paid, aggregating $3,319.97.

14. It is agreed further that the petition of intervention of United States Fidelity and Guaranty Company, the answer of Gurney P. Hood,

and the reply of petitioner, be incorporated in and made a part of these agreed facts, and that the petitioner and respondent be allowed to exhibit to the court in the hearing of this cause such papers and orders that may be pertinent to a full and clear understanding of the facts herein.

This 28 October, 1932."

The judgment of the court below was as follows: "This cause coming on for hearing before his Honor, W. A. Devin, judge, at the October Term, 1932, of the Superior Court of New Hanover County, upon the agreed facts attached to and made a part hereof, and being heard; it appears to the court that petitioner seeks to have its claim adjudged as a preferred claim against the assets of said Home Savings Bank superior to other depositors on the ground that the funds in question are government funds and entitled to priority as such within the contemplation of section 3466 of the Revised Statutes of the United States (31 U. S. C. A., sec. 191), and other statutes; and, after hearing the same, the court being of the opinion that the claim of petitioner is not entitled to priority, it is therefore ordered, adjudged and decreed by the court that the petition be and the same is hereby dismissed at the cost of the petitioner.                    W. A. DEVIN, Judge Presiding.

The petitioner, United States Fidelity and Guaranty Company, excepted, assigned error to the judgment as signed, and appealed to the Supreme Court.

*Robt. D. Cronly, Jr., for petitioner, appellant.*
*Woodus Kellum for respondent, appellee.*

CLARKSON, J. Petitioner, appellant, contends that it is agreed that appellant paid the amount of the deposit and took an assignment and subrogation receipt. If the court decides that the deposit was money of the United States and was entitled to priority as such within the contemplation of section 3466, Rev. Stat. of U. S., the appellant will be subrogated to all priority rights of the United States. Appellee concedes this.

The respondent, appellee, contends that having elected to file its assignment and subrogation receipt without claiming a preference, petitioner is now estopped from seeking a preference.

The Home Savings Bank of Wilmington, N. C., was guardian of the minors concerned in this controversy, and gave bond in the U. S. Fidelity and Guaranty Company, as surety for the faithful performance of its trust. The bank intermingled the guardian money with its other money in its vaults. The bank is insolvent. It is settled in this jurisdiction that the U. S. Fidelity and Guaranty Company is liable on its bond. *Bank v. Corporation Commission,* 201 N. C., 381.

It is contended by petitioner, appellant, U. S. Fidelity and Guaranty Company, that the money the bank received, it knew was the proceeds of War Risk Insurance paid by the U. S. Veterans' Bureau and that all funds involved in this suit were derived from payments made by the United States Veterans' Bureau for and on behalf of said beneficiaries, under an insurance policy issued upon the life of Bennie Clay, a soldier in the United States Army. That the money on deposit in the Home Savings Bank of Wilmington, N. C., was put there by said Savings Bank as guardian was money of the United States and entitled to priority as such within the contemplation of section 3466 Revised Statutes of the United States (31 U. S. C. A., sec. 191) and other U. S. Statutes. We cannot so hold.

The matter was decided in the U. S. Supreme Court to the contrary, in a decision for the Court written by *Mr. Justice Butler,* 13 March, 1933. "Petitioner was a United States soldier in the World War and while in the service suffered permanent mental incompetency. He became entitled to receive from the United States War Risk Insurance and disability compensation. 10 September, 1919, the county court of Breathitt County, Kentucky, appointed for him the guardian above named who qualified and has ever since acted as such. The United States paid to the guardian the installments due his ward. The guardian deposited them in the Hargis Bank and Trust Company. It became insolvent and 5 February, 1930, conformably to the laws of the State, all its assets were taken over by respondent acting as special deputy banking commissioner and liquidating agent. At that time the guardian had on deposit $6,070.80 derived from such payments. The assets of the bank were not sufficient to pay more than one-half the total owing to depositors. Claiming priority under R. S., sec. 3466, the guardian demanded payment of his deposit in full. Respondent held that petitioner was only entitled to share ratably with other creditors and refused to pay. Petitioner brought this suit in the circuit court of Breathitt County to enforce the asserted priority. That court gave him judgment as prayed. The court of appeals reversed on the ground that the bank was not indebted to the United States on account of the deposit by the guardian. 244 Ky., 68. The question has not been considered here and, decisions upon it in the state courts being in conflict, we granted a writ of *certiorari.* 287 U. S., ...... Petitioner relies upon the clause of section 3466 declaring that whenever any person indebted to the United States is insolvent the debts due to the United States shall first be satisfied. He asserts that, under acts of Congress later to be considered, the War Risk Insurance and disability compensation paid to the guardian of an incompetent veteran remains the money of the United States so long as it is subject to his control and suggests that the guardian is a mere instrumentality of the United States for the disbursement of such

money for the benefit of the veteran. And he maintained that the deposit here involved is money of the United States and that the bank is indebted to it therefor. . . . The guardian, appointed by the county court, was by the laws of the state given the custody and control of the personal estate of his ward and was authorized to collect and receive the money in question. Ky. Stat., sec. 2030. And unquestionably payment to the guardian vested title in the ward and operated to discharge the obligation of the United States in respect to such installments. . . . He was not an agent or instrumentality of the United States. (Citing authorities.) It results that the deposit in question does not belong to the United States and, as indebtedness to it is essential to priority, the guardian's claim under that section is without merit." Our statute C. S., 2169, is similar to the Kentucky statute above referred to. For the reasons given, the judgment below is

Affirmed.