REICHERT v. BERLIN STATE BANK.

1. GUARDIAN AND WARD—WORLD WAR VETERANS—PROBATE COURT.
   Guardians of incompetent veterans act solely by virtue of authority vested in them by probate court and under its direction, not under that of United States veterans' bureau (38 USCA, § 421 et seq., 1 Comp. Laws 1929, §§ 810–829).

2. SAME—WORLD WAR VETERANS—COMPENSATION PAYMENTS.

Title of payments made under world war veterans' act, 1924 (38 USCA, § 421 *et seq.*), is not reserved in the United States but is vested in ward and 38 USCA, § 618, providing that compensation payments to guardians of incompetent veterans shall not "be subject to attachment, levy or seizure under any legal process" is intended to guard such payments against claims of creditors alone.

3. BANKS AND BANKING—GUARDIAN AND WARD—PREFERENCES.

Bank deposits consisting of compensation payments to guardians of incompetent veterans although not expended for veteran's benefit are not trust funds entitled to preference in bank receivership.

Appeal from Ottawa; Miles (Fred T.), J. Submitted October 19, 1933. (Docket No. 145, Calendar No. 37,497.) Decided December 5, 1933.

Receivership proceedings by Rudolph E. Reichert, State banking commissioner, against Berlin State Bank, of Marne, Michigan. George B. Laubach intervened as guardian of Charles Leonard Gilbert, a mentally incompetent person, to petition for establishment of a preference as to deposits for ward's estate. Petition denied. Intervener appeals. Affirmed.

*Linsey, Shivel & Phelps,* for intervener.

*Louis H. Osterhous* and *Leo C. Lillie,* for receiver.

BUTZEL, J. George S. Laubach, as guardian of Charles Leonard Gilbert, a mentally incompetent person, had $604.27 in savings and $77.22 in commercial deposits in the Berlin State Bank of Marne, Michigan, at the time of its closing by Rudolph E. Reichert, State banking commissioner. These funds were the proceeds of monthly compensation pay-

ments made to the guardian by the United States for his mentally incompetent ward, under the provisions of an act of congress, approved June 7, 1924, and known as the "World War Veterans' Act, 1924 (38 USCA, § 421 *et seq.*)." The guardian was appointed by the probate court for the county of Ottawa in accordance with the provisions of the Michigan statutes with reference to the care of incompetent veterans, etc. 1 Comp. Laws 1929, §§ 810–829. The ward is now confined as an insane person in the United States veterans' hospital at Camp Custer, Michigan. The guardian filed a petition claiming priority of his claim over those of other depositors and now appeals from an order denying priority.

Appellant claims that the moneys on deposit belong to the United States and, as such, are subject to priority in payment over general deposits by virtue of 31 USCA, § 191, which provides as follows:

"Priority established. Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

Petitioner contends that he never acquired title to the money that was on deposit; that he is only the instrumentality or agent of the United States to see to the proper disbursement of the funds as it becomes necessary, and then only under the direc-

tion of the United States veterans' bureau; and that the funds deposited were trust funds and should never have been commingled with those of the bank.

Gilbert was adjudged an incompetent following proceedings brought under the "uniform veterans guardianship act" (1 Comp. Laws 1929, §§ 810–829). The act provides for the appointment of a guardian, who acts under the direction of the probate court, not under that of the United States veterans' bureau. Except for the existence of a Federal statute punishing embezzlements by guardians and certain Michigan statutory provisions requiring the filing of various papers with the bureau, there is little evidence of Federal supervision of guardians. The latter act solely by virtue of the authority vested in them by the probate court and under its direction. The veterans' bureau occupies a position somewhat analogous to that of a next friend in the probate court, in its ability to intervene for the protection of veterans, but with powers more definitely described by statute.

Undoubtedly there is considerable authority for appellant's contention that these moneys should be regarded as belonging to the United States and a preference recognized under the statute hereinbefore cited. *Butler* v. *Cantley,* 226 Mo. App. 1047 (47 S. W. [2d] 258); *Anderson* v. *Olivia State Bank,* 186 Minn. 396 (243 N. W. 398, 83 A. L. R. 1086); *Fisher's Estate,* 302 Pa. 516 (153 Atl. 736); *Nelson* v. *John B. Colegrove & Co.,* 267 Ill. App. 317; *State, ex rel. Sorenson,* v. *Security Bank of Creighton,* 121 Neb. 521 (237 N. W. 620); *State, ex rel. Spillman,* v. *First State Bank of Pawnee City,* 121 Neb. 515 (237 N. W. 623); *contra, State, ex rel. Robertson,* v. *Bank of Bristol,* 165 Tenn. 461 (55 S. W. [2d] 771); *Taylor* v. *Bankers' Trust Co.,* 186 Ark. 1109 (57 S. W. [2d] 1059); *Puffenbarger* v. *Charter,* 112

W. Va. 488 (165 S. E. 541) ; *Shippee* v. *Commercial Trust Co.,* 115 Conn. 326 (161 Atl. 775). In spite of the slight supervision maintained under Federal and State laws, however, it is clear that these payments are made to the guardian without any intention of reserving title in the Federal government. If we deem these funds still within the possession and control of the government and not a part of the estate of the ward, it is apparent that the government would be responsible to its incompetent veterans for losses suffered as a result of the insolvency of banks in which their compensation payments have been deposited. It is extremely doubtful that congress intended the government to assume such a burden.

We believe the question has been definitely settled by the recent opinion of the United States supreme court in the case of *Spicer* v. *Smith,* 288 U. S. 430 (53 Sup. Ct. 415, 84 A. L. R. 1525), wherein the court affirmed the decision of the supreme court of Kentucky in the case of *Smith* v. *Spicer,* 244 Ky. 68 (50 S. W. [2d] 64). The facts therein were very similar to those in the instant case, involving a claim of priority in the deposits of a closed bank on behalf of a mentally incompetent veteran. Mr. Justice Butler, speaking for the court, said:

"And unquestionably payment to the guardian vested title in the ward and operated to discharge the obligation of the United States in respect of such instalments.    *    *    *

"The provisions for exemption, nonassignability and suspension of payments plainly imply the passage of title from the United States to the veteran. The denunciation of embezzlement by guardians is not inconsistent with that of intention. These regulations, like many to be found in pension laws, disclose a purpose to safeguard to beneficiaries the appropriations and payments made for their benefit

\* \* \* and evince special solicitude for the protection of veterans who by reason of mental incompetency are unable to protect themselves. The clauses subjecting such payments to claims of the United States against the veteran and providing for escheat to the United States make against petitioner's claim. Neither would be appropriate or necessary if the money paid to such guardian continued to belong to the United States until actually disbursed by him for the veteran's benefit.''

The decision in *Spicer* v. *Smith, supra,* has since been followed in several cases. *Commissioner of Banks* v. *Buckley,* 282 Mass. 512 (185 N. E. 27); *Taylor* v. *Cassell,* 187 Ark. 124 (58 S. W. [2d] 689); *In re Home Savings Bank,* 204 N. C. 454 (168 S. E. 688). The pertinent statute in the United States supreme court decision was 38 USCA, § 454, which provides:

"The compensation \* \* \* shall not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made.''

It differs slightly from the statute in this case (38 USCA, § 618), which specifies that

"No sum payable under this chapter \* \* \* shall be subject to attachment, levy, or seizure under any legal or equitable process.''

It is our belief that congress intended to extend no greater protection under section 618 than was provided under section 454 and that the legislative intent in each case was to guard compensation payments against the claims of creditors alone. See *Andrew* v. *Colo Savings Bank,* 205 Iowa, 872 (219 N. W. 62); *Shaw* v. *Williams* (Tex. Civ. App.), 60 S. W. (2d) 1073.

The order denying priority is affirmed, without costs to either party.

McDonald, C. J., and Weadock, Potter, Sharpe, North, Fead, and Wiest, JJ., concurred.