(No. 22360.—

THE PEOPLE *ex rel.* Oscar Nelson, Auditor of Public Accounts, *vs.* THE STONY ISLAND STATE SAVINGS BANK.—(EDWIN C. KUHN, Appellant, *vs.* IRWIN T. GILRUTH, Receiver, Appellee.)

*Opinion filed October 24, 1934.*

HARRY A. SEWELL, and BRAMHALL & NOVOTNY, (AB-DON PALLASCH, and CHARLES V. FALKENBERG, of counsel,) for appellant.

KIRKLAND, FLEMING, GREEN & MARTIN, (ADRIAN L. HOOVER, DUDLEY F. JESSOPP, and EUGENE SWIGART, of counsel,) for appellee.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The Auditor of Public Accounts of the State, on June 10, 1931, appointed Irwin T. Gilruth receiver of the Stony Island State Savings Bank. Shortly thereafter, the People of the State, on the relation of the Auditor, filed a bill in the superior court of Cook county for the dissolution of the bank and the liquidation of its business. On May 17, 1932, Edwin C. Kuhn filed an intervening petition by which he sought to have allowed as a preferred claim the sum of $400 to his credit in a savings account when the bank ceased to do business. The receiver, by his answer, denied the petitioner's right to a preference over the other depositors of the bank. The facts were stipulated and the cause was heard upon the petition, the answer and the stipulation. The court found that the petitioner was entitled to priority in payment and ordered that the receiver pay him the sum demanded as a preferred claim forthwith. The receiver prosecuted an appeal to the Appellate Court for the First District and that court reversed the order of the superior court and remanded the cause with directions to allow the petitioner's claim, without preference or priority, upon the presentation of a proper petition for that purpose. A certificate of importance was granted and an appeal to this court was allowed upon the petitioner's application, and the record is submitted for a further review.

The Stony Island State Savings Bank was organized under the banking laws of this State and conducted a general banking business in the city of Chicago. Edwin C.

Kuhn, the appellant, is a veteran of the World War. By authority of the World War Adjusted Compensation act (U. S. Code, Annotated, chap. 11, title 38, p. 270,) an adjusted service certificate was issued to him and upon this certificate the Federal government made him a loan of $778.50. Kuhn received a check payable to his order and drawn upon the treasurer of the United States for the amount of the loan. He presented the check to the Stony Island State Savings Bank on March 24, 1931; the bank paid him $278.50 in money, and he opened a savings account in his name for the other $500. In opening the account, Kuhn prepared a deposit slip and signed a ledger card. The latter disclosed the number of the account and the address of the depositor. A savings account pass-book, setting forth the rules governing deposits in the savings department and the allowance of interest on such deposits at the rate of three per cent per annum, was issued and delivered to Kuhn. Later, on April 27, 1931, he withdrew $100. He made no other deposit or withdrawal and when the receiver took possession, there remained $400 to his credit. At that time the bank's cash resources, including the credits with correspondents, amounted to $28,189.51. Claims subsequently filed with the receiver upon which preference in payment was sought amounted to $173,169.98.

To establish his claim to priority in payment over the general creditors of the bank, the appellant invokes two Federal statutory provisions. Of these, the first is section 191, chapter 6, title 31, United States Code, Annotated, page 75, which provides that "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment

thereof, or in which the estate and effects of an absconding, concealed or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed." This section gives the United States a preference or priority in payment over other creditors of an insolvent debtor, and in case of his death the rule applies in the administration of his estate.

As a rule, when money is deposited in a bank, the title to the money passes from the depositor to the bank, and the latter becomes the depositor's debtor for the amount of the deposit. Under such a relationship, the deposit constitutes a part of the bank's assets, and in case of the insolvency of the bank, the depositor has no right to a preference, but shares *pro rata* with the bank's general creditors. Exceptions to this rule are: first, where money or other thing is deposited with the understanding that the particular money or thing is to be returned to the depositor; second, where the money or thing deposited is to be used or applied for a specifically designated purpose, and third, where the deposit is wrongful or unlawful. To make a deposit a special one, the bank must be made an agent or trustee rather than a debtor, and its agency or trusteeship cannot be created out of the mere external relationship of debtor and creditor unless the deposit is wrongful or the law forbids the bank becoming a debtor. *People* v. *Farmers State Bank,* 338 Ill. 134; *People* v. *State Bank of Maywood,* 354 id. 519.

The effect of the deposit in a bank of installments of war risk insurance and disability compensation was considered in *Spicer* v. *Smith,* 288 U. S. 430. The petitioner was a United States soldier in the World War and while in the service suffered permanent mental incompetency. He became entitled to war risk insurance and disability compensation. The county court of Breathitt county, Kentucky, appointed a guardian for him. The United States paid to the guardian the installments due his ward and the

guardian deposited them in the Hargis Bank and Trust Company. The bank became insolvent and conformably to the laws of the State, its assets were taken over by a special deputy banking commissioner and liquidating agent. At that time the guardian had on deposit $6070.80 derived from the payments made by the United States. The assets of the bank were not sufficient to pay the claims of the depositors. The guardian claimed priority under the section which the appellant in the case at bar invokes and demanded payment in full. The deputy banking commissioner denied a preference in payment, insisting that the petitioner was only entitled to share ratably with other depositors. The petitioner instituted suit in the circuit court of Breathitt county and that court allowed the asserted priority. The judgment was reversed by the Court of Appeals of Kentucky on the ground that the deposits by the guardian did not make the bank a debtor of the United States. *Smith* v. *Spicer's Guardian,* 244 Ky. 68, 50 S. W. (2d) 64.

The judgment of the Court of Appeals was affirmed by the Supreme Court of the United States. The petitioner relied on the Federal statutory provision that whenever any person indebted to the United States is insolvent, the debts due to it shall first be satisfied. The contentions of the petitioner were that the installments of war risk insurance and disability compensation paid to the guardian remained the money of the United States so long as they were subject to his control; that the guardian was a mere instrumentality of the government to disburse such money for the benefit of the veteran, and that the deposits made by the guardian constituting such public money, the bank which received the deposits was indebted to the United States for them. The contentions made in that case, it should be observed, are now urged in substance by the appellant in the case at bar to establish the desired preference or priority in payment.

After stating the pertinent substance of the provisions of the World War Veterans act, the Supreme Court of the United States, in *Spicer* v. *Smith, supra,* said: "The guardian, appointed by the county court, was by the laws of the State given the custody and control of the personal estate of his ward and was authorized to collect and receive the money in question. (Ky. Stat. sec. 2030). And unquestionably payment to the guardian vested title in the ward and operated to discharge the obligation of the United States in respect of such installments.—*Taylor* v. *Bemiss,* 110 U. S. 42, 45; *Lamar* v. *Micou,* 112 U. S. 452, 472; *Maclay* v. *Equitable Life Assurance Society,* 152 U. S. 499, 503 * * *".

"The provisions for exemption, non-assignability and suspension of payments plainly imply the passage of title from the United States to the veteran. The denunciation of embezzlement by guardians is not inconsistent with that intention. These regulations, like many to be found in pension laws, disclose a purpose to safeguard to beneficiaries the appropriations and payments made for their benefit (*United States* v. *Hall,* 98 U. S. 343, 353; *Westfall* v. *United States,* 274 Ga. 256) and evince special solicitude for the protection of veterans who by reason of mental incompetency are unable to protect themselves. The clauses subjecting such payments to claims of the United States against the veteran and providing for escheat to the United States make against petitioner's claim. Neither would be appropriate or necessary if the money paid to such guardian continued to belong to the United States until actually disbursed by him for the veteran's benefit."

The petitioner cited *United States* v. *Hall,* 98 U. S. 343, and *Bramwell* v. *United States Fidelity and Guaranty Co.* 269 id. 483, both of which are relied upon by the present appellant. The Supreme Court showed that neither of these cases was in point and concluded its opinion in *Spicer* v. *Smith* with the statement that "here the guardian was

appointed pursuant to State law to act for and on behalf of his ward. He was not an agent or instrumentality of the United States. (*Shippee* v. *Commercial Trust Co.* 115 Conn. 326, 161 Atl. 775; *Puffenbarger* v. *Charter*, 112 W. Va. 488, 165 S. E. 541; *State ex rel. Smith* v. *Shawnee County Comrs. supra*). It results that the deposit in question does not belong to the United States and, as indebtedness to it is essential to priority, the guardian's claim under that section is without merit."

If the title to the money paid by the United States to the guardian of an incompetent persons vests in the ward, it necessarily follows, as a legal consequence that, when payment is made directly to a veteran who is qualified and competent to act, the United States neither reserves any title to, nor retains any control over, the fund. In the present case, the intervention of a guardian was unnecessary for the appellant had attained his majority and was competent to act in his own behalf. The check drawn upon the United States treasury for the amount of the loan was delivered to him directly. The Federal government retained no control over the disposition of the check for it had become the appellant's absolute property. He exercised complete control of the check when he chose to take part of the amount for which it was drawn in money and to deposit the remainder in a savings account yielding him interest at three per cent per annum. Upon the deposit of the check, the title to it passed from the appellant to the bank. By the deposit, the check, and its proceeds after collection, ceased to be the appellant's property and they became the property of the bank. The relationship of debtor and creditor was created between the parties. *People* v. *Farmers State Bank*, 338 Ill. 134; *People* v. *State Bank of Maywood*, 354 id. 519; *Mobley* v. *Jackson*, 171 Ga. 434; *Gainey* v. *Bank of Thomasville*, 176 id. 736; *Andrew* v. *Colo Savings Bank*, 205 Iowa, 872; *State* v. *Bank of Bristol*, 55 S. W. (2d) (Tenn.) 771.

o

Cases in which it was decided that a deposit similar to the one made by the appellant is a general deposit and that, in case of the insolvency of the bank, the depositor is not entitled to priority in payment over other depositors are *United States Fidelity and Guaranty Co.* v. *Montgomery,* 226 Ala. 298; *Taylor* v. *Bankers' Trust Co.* 186 Ark. 1109; *Taylor* v. *Cassell,* 58 S. W. (2d) (Ark.) 689; *Shippee* v. *Commercial Trust Co.* 115 Conn. 326; *Mobley* v. *Jackson,* 171 Ga. 434; *Gainey* v. *Bank of Thomasville,* 176 id. 736; *Andrew* v. *Colo Savings Bank,* 205 Iowa, 872; *State* v. *Shawnee County Comrs.* 132 Kans. 233; *Commissioner of Banks* v. *Buckley,* 282 Mass. 512; *Reichert* v. *Berlin State Bank of Marne,* 265 Mich. 150; *In re Home Savings Bank,* 204 N. C. 454; *State* v. *Bank of Bristol,* 55 S. W. (2d) (Tenn.) 771; *Shaw* v. *Williams,* 60 S. W. (2d) (Tex.) 1073; *Burke* v. *Shaw,* 63 S. W. (2d) (Tex.) 1117; *Puffenbarger* v. *Charter,* 112 W. Va. 488. The contention of the appellant that, notwithstanding the delivery to him of the check representing the loan by the United States upon his adjusted service certificate, the government retained control of the proceeds of the check justifying, on that account, the allowance of a preference in payment over other general depositors in the bank, must therefore be denied.

The second statutory provision upon which the appellant relies to obtain the priority he seeks is section 618, chapter 11, title 38, United States Code, Annotated, page 276, which to the extent that it is pertinent, provides that "no adjusted service certificate, and no proceeds of any loan made on such certificate, shall be subject to attachment, levy or seizure under any legal or equitable process." The appellant argues that the act of the Auditor of Public Accounts in assuming control of the assets of the Stony Island State Savings Bank was a seizure by legal or equitable process within the meaning of this section.

The section exempts from attachment, levy or seizure, by any legal or equitable process, an adjusted service certificate and the proceeds of any loan made upon such a certificate. The remedies by which a debtor's property may be subjected and applied in or toward the satisfaction of his creditor's demand are not available against a veteran's adjusted service certificate or the proceeds of a loan made upon it. The protection of section 618 with respect to the property defined is afforded where the veteran is a debtor and a third person has a claim or demand against him. Without a relationship in which the veteran is the debtor or obligor, the section has no application. A veteran does not, by the deposit in a bank of all or a part of the proceeds of a loan upon his adjusted service certificate become a debtor or obligor; he becomes, on the contrary, a creditor of the bank. Manifestly, a relationship wherein the veteran is the creditor and the bank is the debtor does not enable the bank, or, if insolvent, its receiver, to subject property of the veteran to attachment, levy or seizure by any legal or equitable process. *Mobley* v. *Jackson,* 171 Ga. 434; *Andrew* v. *Colo Savings Bank,* 205 Iowa, 872; *Reichert* v. *Berlin State Bank,* 265 Mich. 150; *State* v. *Bank of Bristol,* 55 S. W. (2d) (Tenn.) 771; *Shaw* v. *Williams,* 60 S. W. (2d) (Tex.) 1073; *Burke* v. *Shaw,* 63 S. W. (2d) (Tex.) 1117.

Upon the taking over of an insolvent bank by the Auditor of Public Accounts no change is effected in the relationship between the bank and a veteran who deposited the proceeds of a loan made by the Federal government on his adjusted service certificate. The bank remains the debtor and the veteran the creditor in the amount of his credit. The act of the Auditor in taking possession of the assets of the bank is not a legal or equitable process directed against funds of the veteran. It is not such a seizure under any process as contravenes section 618. The bank's indebtedness to the veteran continues after the Auditor takes pos-

session of the assets of the bank and the veteran remains an ordinary creditor of the bank for the sum it owed him when it ceased to do business. In administering the insolvent bank's affairs, the receiver applies its assets, and not the veteran's money, toward the discharge of the bank's liabilities. The condition precedent to the operation of section 618 is therefore wanting.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*