## In re COLEMAN'S ESTATE.
## McGUIRE v. McGEISEY et al.

No. 25233. Dec. 15, 1936.

Rehearing Denied March 2, 1937.

Holcombe, Lohman & Barney, for plaintiff in error.

Floyd O. Yarbrough and A. B. Campbell, for defendants in error.

BAYLESS, J. Joe S. McGuire, personally and as executor of the estate of Charles Coleman, deceased, appeals to this court from a judgment of the district court of Osage county, Okla., rendered on appeal from the county court of said county.

Charles Coleman, deceased, was a veteran of the World War and as such veteran had a policy of war risk insurance, in which his estate was designated as beneficiary. He died in 1930, testate, and McGuire qualified as executor and entered upon the administration of the estate. There was paid to him $7,933.27, the face value of said war risk insurance policy. The United States government then presented a claim to the executor against Coleman for income tax for the year 1929, which was delinquent, and McGuire thereupon paid $928.55 in payment thereof. When he filed his final account, objection was made to the allowance of this item as a credit in favor of McGuire, and both lower courts sustained such objection. There was other money in the estate in the hands of McGuire, but the parties agree that this payment was made from the proceeds of the war risk insurance policy.

The parties contend that title 38, U. S. C. A., sec. 454, reading:

"454. The compensation, insurance, and maintenance and support allowance payable under Parts II, III, and IV, respectively, shall not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made under Parts II, III, or IV; and shall be exempt from all taxation. Such compensation, insurance, and maintenance and support allowance shall be subject to any claims which the United States may have, under Parts II, III, IV and V, against the person on whose account the compensation, insurance, or maintenance and support allowance is payable"

—controls.

McGuire contends that the exemptions, or rather the protection from seizure, provided in said statute last only until the money is paid to the insured in his lifetime, or to his estate after death; in other words, that the only policy of the government is to see that the money reaches the insured or his estate unmolested, and thereafter it is as other money.

The legatees contend that such statute, in the light of later enactments of the Congress (43 Stats. at Large 625, title 38 U. S. C. A., sec. 514, passed June 7, 1924, as amended by an act of March 4, 1925, sec. 14), evinces a broad general policy on the part of the government to protect this money in the hands of the insured, or in his estate, or in the hands of his designated beneficiaries so long as it remains money and can be identified.

The parties assert they cannot find a decision upon this issue by the federal or state courts. It is a matter of first impression in this state.

There are decisions of other courts applying section 454, supra, to other facts, but these cases are valuable only for their analogy. However, there is a sharp conflict in the holdings. State ex rel. Smith v. Board of County Commissioners, 132 Kan. 233, 294 P. 915; McIntosh v. Aubrey, 185 U. S. 122, 46 L. Ed. 834; Saxe v. Board of Review of Philadelphia, 107 Pa. Super. 108, 163 Atl. 317; Johnson v. Board of Commissioners, 61 S. D. 372, 249 N. W. 683; State v. Wright, 224 Ala. 357, 140 So. 584; and Trotter v. State of Tennessee, 290 U. S. 354, 78 L. Ed. 358, are cases cited and relied upon by McGuire.

Gregg v. United States, 15 F. (2d) 8, Wilson v. Sawyer, 177 Ark. 492, 6 S. W. (2d) 825; Butler v. Cantley, 226 Mo. App. 1047, 47 S. W. (2d) 258; City of Atlanta v. Stokes, 175 Ga. 201, 165 S. E. 270; Yates Co. Bank v. Carpenter (N. Y.) 7 L. R. A. 557; and Trotter v. State of Tennessee, supra, are cited and relied upon by contestants.

The cases relied upon by McGuire are based upon these points: (1) The duty of all to pay taxes; (2) that exemption of money from seizure for the payment of tax or other claims must be clear, and is not to be raised by implications except those of the strongest kind; and (3) considering the analogy of language between section 454, supra, and title 38, U. S. C. A., sec. 54 (relating to Civil War pensions), and the announced construction of the latter cited section, any exemption or protection of such insurance benefits ceases when the money comes into the hands of the insured or his personal representative at law.

The cases relied upon by contestants simply announce that section 454, supra, evidences a broad beneficent policy on the part of the government toward former soldiers and their dependents, and the protection of such a policy remains so long as the benefits remain in the possession of the insured or his estate.

The Supreme Court of the United States left this precise question open. Trotter v. State of Tennessee, supra. In the course of this opinion, however, it followed the line of cases relied upon by McGuire, and called attention to such cases on somewhat analogous matters. That court specifically referred to the case of McIntosh v. Aubrey, supra, and therefore recognized as applicable to the interpretation of the act under discussion the principles announced in that opinion, and the many other opinions of the federal and state courts construing title 38, sec. 54, supra.

This question is one relating to a federal statute, and we should endeavor to construe it in keeping with the construction which may be placed thereon by the federal courts, and this can be done only by studying what the federal courts have said concerning similar statutes under similar or analogous fact situations, and applying the principles thus deduced.

Title 38, U. S. C. A., sec. 54, reads:

"No sum of money due, or to become due, to any pensioner shall be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, whether the same remains with the pension office, or any officer or agent thereof, or is in course of transmission to the pensioner entitled thereto, but shall inure wholly to the benefit of such pensioner."

This act was construed and applied to mean that the benefits provided in the act

as a whole should be protected from seizure only while in the hands of the government, or its agents, or during transmission to the person entitled thereto, or, in other words, when it had come into the hands or control of the person entitled thereto it was as any other money belonging to him, subject to seizure in the same manner and to the same extent as his other money. In arriving at this determination, the courts gave consideration to the words "due, or to become due" and "shall inure." It was said that when it had been delivered it was no longer "due or to become due," and that it "had inured."

The language of section 454, supra, is no stronger or more inclusive in this respect. The use of the word "payable" in its ordinary sense excludes the notion of fulfillment. It is limited to that which has become payable, or due or owing. It has an essentially different meaning from "paid." The analogy presented in the language of the two acts, section 454 and section 54, supra, is obvious and complete.

It is agreed that no question of taxation of this money is presented. Therefore, that portion of section 454 relating to exemption from taxation is not involved, and even if it were, it is conceded from the authorities presented that it becomes taxable when received, or paid, and held in investments. Trotter v. State of Tennessee, supra.

We therefore hold that the money paid into the hands of the executor as the proceeds of a war risk insurance policy payable to the insured's estate was proper to be used to pay claims presented against the estate by the United States government, and the lower courts erred in holding otherwise.

Judgment reversed.

OSBORN, V. C. J., and RILEY, BUSBY, PHELPS, CORN, and GIBSON, JJ., concur. McNEILL, C. J., and WELCH, J., dissent.